PAUL R. BESSETTE & another[1] vs. JEANNETTE A. BESSETTE.

Worcester. February 5, 1982. — April 15, 1982.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, & NOLAN, JJ.

Corporation, Stockholder, Close corporation. Fiduciary.

A stockholders' derivative action was the only means by which the minor-
ity stockholders of a corporation could properly assert their claims that
the corporation had made wrongful payments to the majority stock-
holder and, consequently, an action by the minority stockholders seek-
ing recovery from the majority stockholder on their own behalf was
properly dismissed. [808-810]

CIVIL ACTION commenced in the Superior Court on June
8, 1978.

The case was heard by Beaudreau, J.

The Supreme Judicial Court granted a request for direct
appellate review.

James F. Queenan, Jr. (Christopher G. Mehne with him)
for the plaintiffs.

Wayne P. Tupper for the defendant.

ABRAMS, J. The plaintiffs, minority stockholders in Bes-
sette & Sons Glass Corp., brought a personal action, alleg-
ing that the defendant, as majority stockholder, caused the
corporation to transfer substantial sums for her benefit in
the form of an excessive salary and payments on notes for
which the corporation received no consideration. The plain-
tiffs contend that such payments were actually dividends,
and seek payment of that portion of the amount received by
the defendant equal to their respective stock interests. The
plaintiffs did not bring a stockholders' derivative action.
After a hearing, a judge of the Superior Court entered a

[1] The other plaintiff is Roland S. Bessette.

judgment which stated that any right to recover such over-payment belonged to the corporation, and that the plaintiffs could seek relief by bringing a derivative action. The plaintiffs declined to do so.[2] The judge, therefore, dismissed the plaintiffs' complaint. The plaintiffs appeal. We granted the plaintiffs' application for direct appellate review. We affirm.

We summarize the facts.[3] Lionel Bessette, the plaintiffs' father, incorporated his glass business in 1969. The new corporation continued the business of selling and installing glass. At the time this action was brought, the defendant (plaintiffs' stepmother), owned fifty-one percent of the capital stock, and the plaintiffs owned forty-nine percent of the stock. The defendant has at all times been treasurer of the corporation.

In 1971, Lionel Bessette retired from the business and, until his death in 1977, spent half the year, accompanied by the defendant, in Florida. The defendant devoted three or four hours a day, five days a week, to the business during the six months of each year she was in Massachusetts. Her principal duties involved helping to obtain bank loans, helping to solve corporate financial problems, and aiding in the collection of accounts receivable. She also controlled the board of directors of the corporation. However, no meetings, either of the board or of the stockholders, were held.

---

[2] The parties have stipulated that on or about February 28, 1979, the corporation filed a voluntary petition in bankruptcy which was allowed on December 20, 1979. Under the Federal Bankruptcy Act of 1898, as amended, the trustee in bankruptcy for the corporation assumes the right to prosecute any cause of action belonging to the corporation. 11 U.S.C. § 110 (a) (1976). The Bankruptcy Act, however, limits the time within which the trustee may bring claims on behalf of the corporation. 11 U.S.C. § 29 (e) (1976). The trustee did not bring a timely action on behalf of the corporation.

[3] The case was referred to a master on November 28, 1978. The master issued his report on January 5, 1979. Contrast *USM Corp.* v. *Marson Fastener Corp.*, 379 Mass. 90, 105 n.17 (1979); *O'Brien* v. *Dwight*, 363 Mass. 256, 298 (1973). The plaintiffs' objections to the master's report were overruled, and the master's report was confirmed on March 7, 1979.

The master determined that during the period from January 1, 1972, through August 24, 1978, the reasonable value of the services rendered by the defendant was $12,500 a year. Based on this finding, the master calculated that the defendant received $11,227 in excess of the reasonable value of her services. In addition, he found that the corporation issued to the defendant notes representing loans alleged to have been made by the defendant to the corporation. He further found that the defendant received $32,650 by virtue of these notes. Finally, he determined that the corporation had not received funds in the face amount of the notes, and that the notes were not issued in payment of an obligation.

The master concluded that the plaintiffs should have brought a derivative action for the benefit of the corporation, and recommended dismissal of the plaintiffs' complaint. At the hearing on the master's report, the plaintiffs argued that their claims did not have to be brought as a derivative action. See *Donahue* v. *Rodd Electrotype Co.*, 367 Mass. 578 (1975). The judge did not agree and dismissed the plaintiffs' complaint.

In the *Donahue* case, we held that "stockholders in the close corporation owe one another substantially the same fiduciary duty in the operation of the enterprise that partners owe to one another." *Id.* at 593.[4] We concluded that a minority stockholder may maintain a personal cause of action

---

[4] In *Donahue* v. *Rodd Electrotype Co.*, 367 Mass. 578, 586 (1975), we defined a close corporation as one "typified by: (1) a small number of stockholders; (2) no ready market for the corporate stock; and (3) substantial majority stockholder participation in the management, direction and operations of the corporation." The master made subsidiary findings conclusive on (1) and (3), but he failed to do so with respect to whether there was a ready market for the stock of the corporation. However, he did find that the corporation was a family-owned glass business. From this an inference can be drawn that there was no ready market for the stock. "[W]here subsidiary findings are reported by the master, both the trial judge and the appellate court are obligated to draw their own inferences from these findings." *Jones* v. *Wayland*, 374 Mass. 249, 255 (1978). See *USM Corp.* v. *Marson Fastener Corp.*, 379 Mass. 90, 92 n.3 (1979); *Samia* v. *Central Oil Co.*, 339 Mass. 101, 122 (1959).

if the majority stockholders of a close corporation cause the corporation to purchase a controlling stockholder's interest without offering the same opportunity to the minority stockholder. In those circumstances, we determined that the majority stockholders violated a fiduciary duty owed directly to the minority stockholders. *Donahue* v. *Rodd Electrotype Co.*, *id.* See *Jones* v. *H.F. Ahmanson & Co.*, 1 Cal. 3d 93 (1969).

The plaintiffs argue that in this case a fiduciary duty is also owed directly to them as minority stockholders. They contend that if a majority stockholder received distributions from a close corporation in the form of an excessive salary and payments on notes for which the corporation received no consideration, individual stockholders may recover on their own behalf. See *Donahue* v. *Rodd Electrotype Co.*, *supra* at 578. However, our holding in *Donahue* applies if "[i]t would be difficult for the plaintiff . . . to establish breach of a fiduciary duty *owed to the corporation* . . . ." *Supra* at 589 n.14.

It is a basic principle of corporate law that if a majority stockholder receives corporate cash distributions and a salary in excess of the reasonable value of services rendered, the right to recover the overpayments belongs to the corporation. "Directors of a business corporation act in a strictly fiduciary capacity. . . . While there is no legal objection to their serving as officers of the corporation and receiving reasonable compensation for services rendered, they cannot be permitted . . . to receive *as* salaries more than the work they do is fairly worth. The fairness of such salaries is open to examination . . . for the *benefit of the corporation* . . . . It is immaterial in this connection whether there was actual fraud. The right of recovery for the *benefit of the corporation* rests upon the excessive payment to a director" (emphasis added). *Stratis* v. *Andreson*, 254 Mass. 536, 539 (1926). See *Sagalyn* v. *Meekins, Packard & Wheat Inc.*, 290 Mass. 434 (1935). Hence, the fiduciary duty on which the plaintiffs base their claim is a duty owed to the corporation, not to individual stock-

holders.[5]  See 5 W. Fletcher, Cyclopedia of the Law of Cor-
porations § 2185, at 619-620 (perm. ed. 1976).  The judge
correctly ruled that the plaintiffs could assert their claims
only as a stockholders' derivative action.  See *Willis* v. *Dills-
burg Grain & Milling Co.*, 490 F. Supp. 46, 49 (M.D. Pa.
1980); *Bruno* v. *Southeastern Servs., Inc.*, 385 So. 2d 620,
622 (Miss. 1980).

*Judgment affirmed.*

---

[5] In *Donahue* v. *Rodd Electrotype Co., supra* at 590 n.15, we stated
that "[a]ttacks on allegedly excessive salaries voted for officers and direc-
tors fare better in the courts [than suits challenging dividend or employ-
ment policies]."  Further, the plaintiffs do not allege that the defendant's
conduct was an attempted "freeze-out" of the minority stockholders by
draining off "the corporation's earnings in the form of exorbitant salaries
and bonuses." *Supra* at 588-589. *Willis* v. *Dillsburg Grain & Milling
Co.*, 490 F. Supp. 46, 50 (M.D. Pa. 1980).  *Yanow* v. *Teal Indus., Inc.*,
178 Conn. 263 (1979).  Thus, the vulnerability of minority stockholders,
which we found controlling in *Donahue* (see 89 Harv. L. Rev. 423, 425-
426 [1975]), is missing.