Palmer *v.* Murphy.

JAMES R. PALMER, individually and as executor,[1] *vs.* HAROLD
B. MURPHY, trustee,[2] & others[3] (and a companion case[4] ).

No. 95-P-747.

Suffolk. October 11, 1996. - March 21, 1997.

Present: BROWN, GILLERMAN, & IRELAND, JJ.

*Corporation,* Close corporation, Liability of officers. *Fiduciary. Practice,
Civil,* Failure to make objection, Parties, Appeal. *Appeals Court,* Juris-
diction. *Evidence,* Business record. *Fraudulent Conveyance.*

In a shareholder's derivative action, where the defendants raised no objec-
tion to the judge's adding the corporation's trustee in bankruptcy as a
party plaintiff after the trial had concluded, the issue was not preserved
for appellate review, and in any event, where the trustee approved the
terms of the final judgment, his joinder as a party produced no preju-
dice. [337-341]
Where appellants failed to follow the procedures set out in G. L. c. 231,
§ 6G, to perfect their appeal, this court was without jurisdiction to
consider their appeal of an award of attorneys' fees and costs under
G. L. c. 231, § 6F. [341-342]
In a shareholder derivative action alleging that corporate assets were
diverted for personal use of the officers and directors, the judge's finding
that certain ledger sheets accurately showed the corporation's true
financial picture for 1987 and ruling that the sheets were admissible as a
business record under G. L. c. 233, § 78, were supported by the evi-
dence, and there was no error, in the absence of similar records for the
years 1986, 1988 and 1989, in the judge's extrapolating from the 1987
records the likely amount (33%) of the corporation's receipts that the
defendants had siphoned off in each of those years. [342-344]
A Superior Court judge incorrectly dismissed claims in a shareholder's de-
rivative action alleging the defendants had made fraudulent transfers of
property to move assets beyond the reach of creditors, where the judge

[1]Of the estate of Warren C. White.

[2]Mr. Murphy is the trustee in bankruptcy of Fayette Corporation (United
States Bankruptcy Court case no. 89-12825-JNG).

[3]Joseph E. McCallion, individually and as trustee of Rafallion Realty
Trust, Raffinowski Realty Trust, Jimella Realty Trust, Cappozzi Realty
Trust, and Burke Realty Trust; James E. Rafferty; and Charles Curtin.

[4]Charles Curtin *vs.* James R. Palmer, executor of the estate of Warren C.
White.

did not determine the defendants' "actual intent" at the time of the conveyances and the evidence suggested that the plaintiffs had a colorable claim under G. L. c. 109A; the matter was remanded for further proceedings including the participation of the corporation's trustee in bankruptcy, who had been added as a party after the trial on the merits had concluded. [344-346]

CIVIL ACTIONS commenced in the Superior Court Department on May 27, 1988, and September 5, 1989, respectively.

The cases were heard by *Patrick J. King*, J.

*Walter H. Mayo, III* for Joseph E. McCallion & others.

*Amy J. Axelrod* (*R. David Beck* with her) for James R. Palmer.

IRELAND, J. In this case of corporate wrongdoing, involving the skimming of corporate assets by the three former officers, directors, and shareholders of a close corporation that is now in bankruptcy, the parties have filed cross appeals from a final judgment of the Superior Court in consolidated actions. In the first action (Palmer case), James R. Palmer sued Fayette Corporation (Fayette) and its two other shareholders, James E. Rafferty and Joseph E. McCallion (both of whom were also officers and directors) in multiple counts, alleging numerous breaches of fiduciary duty by them — most notably their siphoning off of corporate assets for personal use.[5] In the second action (Curtin case, see note 4), Charles Curtin sought to have a trust in his behalf imposed by the court on shares of Fayette stock currently held by Palmer.

One week after the Palmer case was filed in Superior Court in September, 1989, defendant Fayette filed for bankruptcy protection under chapter seven of the United States Bankruptcy Code. At the time of this appeal, Fayette's chapter seven petition for liquidation remains pending in the United States Bankruptcy Court. The plaintiff in the Curtin case moved to sever Fayette as a defendant because of the pending

---

[5]The complaint also named as a defendant Charles Curtin, an employee of a nightclub owned by the corporation and later a director of the corporation. The complaint was amended before trial to add Joseph E. McCallion as a defendant in his capacity as trustee and to add five counts alleging fraudulent conveyances by the defendant shareholders of real estate assets personally held by them into several realty trusts, of which McCallion is the trustee.

bankruptcy proceedings and on the theory that the corporation was not a necessary or indispensable party to that case. The motion was allowed. In the Palmer case, Palmer sought to sever the claim against Fayette for the same reason and also to avoid possible problems with the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362 (1994).[6] Palmer's first motion to sever Fayette was denied without prejudice. His renewed motion to sever was allowed, and both the Palmer and Curtin cases then proceeded to a consolidated trial with neither the corporation nor the bankruptcy trustee as a party.

Following a five-day, jury-waived trial in the Superior Court, the judge issued a memorandum of decision with findings of fact and rulings of law in the two cases. We summarize the salient points. The judge ruled in the Curtin case that Curtin had failed to establish an equitable interest in twenty-five of the fifty shares of Fayette stock previously held by Warren C. White and now held by Palmer as White's executor and principal beneficiary under White's will.

The judge found in the Palmer case that, between 1986 and 1989, when Fayette actively conducted the business of operating a lounge in downtown Boston, its three principals — James E. Rafferty, Joseph E. McCallion and the late Warren C. White — had siphoned off for their personal use nearly $1,500,000, or approximately one third of the corporation's gross earnings. The judge ruled, however, that Palmer was not entitled to recover on any of the skimmed assets. The siphoned funds belonged, instead, to Fayette, and, since Fayette was in bankruptcy, the funds belonged to Fayette's bankruptcy trustee. The judge concluded that the skimmed assets to which the trustee was entitled were $556,825 from Rafferty, $574,325 from McCallion,[7] and $336,205 from White's estate (based on a finding that, until his death in 1987, White had also skimmed corporate assets). The judge found, in addition, that the three principals had jointly engaged in a scheme to defraud the taxing authorities and other creditors.

[6]At the same time, Palmer obtained permission from the United States Bankruptcy Court to proceed with the Palmer case in the Superior Court against the individual shareholders, officers, and employees.

[7]This sum included $556,825 in skimmed profits plus $17,500 in tangible assets (Fayette's sound system equipment) which McCallion had failed to turn over to the bankruptcy trustee for auction.

In essence, the three had kept two sets of corporate records — one showing Fayette's "true" financial picture ("green ledger sheets" or "income summaries") and the other, showing far fewer receipts, that was provided to Fayette's accountant for Federal and State tax filing purposes.[8]

In a subsequent memorandum and order (dated July 7, 1993), the judge on his own motion added Fayette's bankruptcy trustee, Attorney John Maiona, as a party and sent notice thereof to Maiona, giving him ten days in which to object. No objection was filed.

In addition, the judge ruled that Palmer could recover attorneys' fees (of $114,427) and costs (of $11,154) for pursuing the corporate skimming claim (count V of the Palmer case), which the judge characterized as a stockholder derivative action brought by Palmer on behalf of Fayette to recover assets that the principals had wrongfully diverted from the corporation. He also ruled that Palmer was entitled to an award of attorneys' fees and costs (on count VI of the Palmer case) for defending against the Curtin case, because the two defendant stockholders (Rafferty and McCallion) had conspired to use Curtin (a nonstockholder) as their agent to file a frivolous lawsuit — the Curtin case — against Palmer. On this count he awarded $22,500 in attorneys' fees and $988 in costs, under G. L. c. 231, § 6F.

1. *Joinder of trustee in bankruptcy as party plaintiff in the Palmer case.* The defendants in the Palmer case (Curtin, Rafferty, and McCallion, hereafter referred to as the defendants) claim that the judge erred by adding Fayette's bankruptcy trustee as a party after the trial had already concluded. The defendants also point out that John Maiona, the person whom the judge formally named as a party in his July 7, 1993, order was, in fact, no longer the trustee at that time, having resigned the post almost eleven months earlier, on August 21, 1992.[9] According to the defendants, Palmer had no standing to

---

[8]The judge ordered a copy of his decision sent to the Attorney General of the Commonwealth and the United States Attorney, as well as the trustee in bankruptcy.

[9]After the Bankruptcy Court accepted his resignation, Maiona continued to hold himself out as Fayette's trustee by authorizing Palmer's attorney to sign his name on several documents submitted to the Superior Court in this case well after he had resigned. This fact did not come to light until after oral argument when counsel for the parties responded to a court order for further information regarding the facts of the case.

pursue a claim against corporate officers and directors, either individually or derivatively on behalf of Fayette; rather, they argue that, as the legal representative of the bankrupt Fayette estate, the trustee alone was empowered to pursue the claim. See *John L. Motley Assocs.* v. *Rumbaugh*, 97 B.R. 182, 185 (Bankr. E.D. Pa. 1989); *Bessette* v. *Bessette*, 385 Mass. 806, 807 n.2 (1982). Because Fayette had been severed as a defendant from the case and the trustee had not been joined, they argue, the skimming claim could not proceed to trial and should have been dismissed. See *Bessette* v. *Bessette*, 385 Mass. at 806-807 (action brought by minority stockholders against majority stockholder for personal recovery was properly dismissed, where plaintiffs declined to recast their claims as a derivative action on behalf of the corporation and to name the corporation as a nominal defendant).

The defendants' argument ignores two crucial facts: first, they never raised this point before or during trial; second, the current bankruptcy trustee has now received notice of the judgment and has approved its terms. We expand on each point. The defendants' trial counsel objected to both of Palmer's motions to sever Fayette, but not on the ground the corporate skimming claim was essentially derivative in nature (which would have required Fayette to remain in the action as a nominal defendant). The defendants' opposition to the motion did not even mention the point they now press — that only the bankruptcy trustee could have advanced the skimming claim.[10] We have examined, too, the trial transcript and can find no evidence there that the defendants' trial counsel ever objected to or questioned the admittedly flawed posture of the case as it proceeded through trial.

Objections, issues, or claims — however meritorious — that have not been raised at the trial level are deemed generally to have been waived on appeal. See, e.g., *McNamara* v. *Honeyman*, 406 Mass. 43, 53 (1989); *Darling* v. *Pinkham*, 9 Mass. App. Ct. 885, 886 (1980); and *Crawford* v. *Cambridge*, 25 Mass. App. Ct. 47, 50 (1987). This case fits none of the

---

[10]The defendants' trial counsel in opposing the motions advanced reasons completely different from the present reasons. Counsel did argue that Fayette "is an indispensable party," but only because examination of its books and records — essential to discovery and proof at trial — would not otherwise be possible because the records were preserved under an injunction pendente lite and, apparently, would have been unavailable for inspection or use at trial.

usual exceptions to the general rule that claims not raised below are waived on appeal. The claim does not go to jurisdiction over the subject matter. No public interest is involved that would warrant us to take up the claim and order a dismissal. Contrast *Filippone* v. *Mayor of Newton*, 16 Mass. App. Ct. 417, 421 (1983). Nor can the defendants argue that injustice would result unless the claims against them for serious corporate wrongdoing are dismissed. Contrast *Cruz* v. *Commissioner of Pub. Welfare*, 395 Mass. 107, 111-112 (1985).

Moreover, we do not read *Bessette* v. *Bessette*, 385 Mass. at 806-807 & n.2, as actually *requiring* the judge, sua sponte and absent motion by a party, to dismiss a derivative claim such as this that fails to name a closely held corporation as a defendant, where the parties agree that the corporation — not the individual plaintiff shareholder — is entitled to receive the fruits of the recovery. Contrast *Bessette* v. *Bessette*, 385 Mass. at 806-807 (in which the plaintiff shareholders had sought a personal recovery only), and *Crowley* v. *Communications for Hosps., Inc.*, 30 Mass. App. Ct. 751, 763-765 (1991), in which the judge wrongly awarded a personal recovery to the plaintiff shareholder. Nor can the defendants plausibly contend that a corporate presence somehow was required at the beginning of the case because a majority of Fayette's disinterested directors might have objected to going forward with the suit. There were no disinterested directors; all three had actively and knowingly participated in the scheme to siphon off assets.

The present bankruptcy trustee, Attorney Harold B. Murphy, appeared with the parties before the panel at a second hearing on this appeal. He stated on the record that he had received and reviewed both the judge's memorandum and order formally naming the trustee as a party and the final judgment, which names the trustee as the party entitled to recover on the skimming claim on behalf of the bankrupt estate. The trustee stated on the record that he approved the terms of the judgment and that, if need be, he would also approve the judgment nunc pro tunc. The defendants have vigorously contended throughout this appeal that the skimming claim was for the trustee and the trustee alone to prosecute. It would appear that those objections have now been cured by the trustee's having formally been added as a party and having approved the final results of the prosecution of the claim.

Palmer correctly relies on Mass.R.Civ.P. 21, 365 Mass. 767 (1974), the text of which is reprinted below in the margin,[11] as authority allowing the judge within his sound discretion, to overcome the technical problem of misjoinder by adding the correct plaintiff. See *Stock* v. *Massachusetts Hosp. Sch.,* 392 Mass. 205, 214 (1984), cert. denied, 474 U.S. 844 (1985) (failure to join indispensable party does not require dismissal under Mass.R.Civ.P. 19[a], or Mass.R.Civ.P. 21, 365 Mass. 765, 767 [1974]); *Perkins Sch. for the Blind* v. *Rate Setting Commn.,* 383 Mass. 825, 830 (1981) (no abuse of discretion in allowing plaintiff, after hearing on the merits, to amend complaint to add the Commonwealth as an indispensable party defendant). The judge did not abuse his discretion by adding the trustee, nor was the addition of the trustee in any way unjust. Whether Palmer or the trustee sat at the plaintiff's table and prosecuted the claim, the cause of action against the defendants — a derivative claim against the two defendant stockholder directors to vindicate the bankrupt corporation's right to recover assets wrongfully diverted — was the same, as was the proof required. Compare *Perkins Sch. for the Blind* v. *Rate Setting Commn.,* 10 Mass. App. Ct. 656, 661-662 (1980), *S.C.,* 383 Mass. at 830. The defendants' miscreant acts undoubtedly helped drive the corporation into the arms of a bankruptcy trustee. Now, in perverted irony, they invoke the trustee's name in an effort to avoid an unpleasant judgment that has resulted against them.

In *Perkins Sch. for the Blind* v. *Rate Setting Commn.,* 383 Mass. at 830, the Supreme Judicial Court observed that the late-joined party defendant "was possibly prejudiced" in being denied its own opportunity to present evidence relevant to the claim. Accordingly, the court remanded the case to the Superior Court for the parties — particularly the newly added defendant — to present additional evidence. *Ibid.* We see little reason to do the same here. Unlike the situation in the *Perkins* case, where it was the added party that claimed lack of opportunity to present evidence, the complaining parties here — the defendants — were present throughout proceed-

---

[11]"Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative, after hearing, at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately."

ings to which a new party was added after the fact, and the addition of the bankruptcy trustee does not prejudice them in any palpable way. We can safely brush aside their claim that they might have insisted upon a jury trial had they known that the trustee and not Palmer would be the plaintiff. No effort was made to file a claim for a jury trial even after it became clear that what amounted to a derivative claim was being tried along with the rest of the claims. The defendants advance no reason why they would have sought a jury trial had the case been prosecuted by the trustee rather than by Palmer. The defendants point to nothing in the record to suggest that their interests were not fully and fairly represented at the bench trial. The issues and lines of proof in the skimming claim were identical, whether Palmer or the trustee presented them. The order adding the trustee in bankruptcy of Fayette Corporation as plaintiff is therefore affirmed.

2. *Award of attorneys' fees under G. L. c. 231, § 6F.* The appeal by the defendants in the Palmer case of the G. L. c. 231, § 6F, award of attorneys' fees and costs is not properly before the panel, as the defendants failed to appeal the order first to a single justice of this court as required by G. L. c. 231, § 6G.

General Laws c. 231, § 6G, as appearing in St. 1992, c. 133, § 561, provides in pertinent part:

> "Any party aggrieved by a decision on a motion pursuant to section six F may appeal as hereinafter provided. If the matter arises in the superior, land, housing, or probate court, the appeal shall be to the single justice of the appeals court at the next sitting thereof. . . .

> "Any party may file a notice of appeal with the clerk or register of the court hearing the motion within ten days after receiving notice of the decision thereon. The clerk or register shall then forward the motion, the court's findings and award, and any other documents relevant to the appeal to the clerk of the court deciding the appeal . . . ."

Because the defendants failed to follow the procedures set out in G. L. c. 231, § 6G, to perfect their appeal, the panel is

without jurisdiction to decide the matter.[12] See *Bailey* v. *Shriberg,* 31 Mass. App. Ct. 277, 282-284 (1991).

3. *Evidence of sums taken through corporate skimming.* Exhibit 34, a copy of the corporation's "green ledger sheets" for 1987, which the judge concluded showed Fayette's true financial picture for that year,[13] miraculously resurfaced on the eve of trial after having been removed from Fayette's headquarters by a bartender four years earlier. No similar documents for 1986, 1988, or 1989, accurately showing the corporation's financial situation for those years, were ever produced at trial; consequently, the judge extrapolated from the 1987 green ledger sheets to estimate the likely amount of siphoned assets for those years.

The defendants argue that the authenticity of exhibit 34 as a corporate record kept in the ordinary course of business cannot be established due to its uncertain chain of custody, which possibly afforded other, unknown persons opportuni-

---

[12]Appellate counsel argues that the award under G. L. c. 231, § 6F, runs against two of the Palmer case defendants who were not even plaintiffs named in the underlying frivolous suit (Curtin case). The judge found, however, that the two defendants, as alleged in Count VI of the Palmer case, had instigated the Curtin case using their associate Curtin to front as the plaintiff. We note that the authorized acts of an agent are, of course, chargeable to the principal. We need not decide the question whether the award could be made against McCallion and Rafferty, however, or the question whether the judge's finding of a conspiracy by the two defendants to file the Curtin case was clearly erroneous, as the matter is not before us.

Attorneys' fees and costs were also awarded to Palmer (under count V of his complaint) for pursuing the derivative claim of corporate skimming. Traditionally, such awards are rooted in general principles of equity and are within the judge's sound discretion. See *Sagalyn* v. *Meekins, Packard & Wheat Inc.,* 290 Mass. 434, 435, 440-441 (1935). An award of attorneys' fees and costs in the shareholder derivative action appears to have been warranted, as the successful prosecution of the action benefited the bankruptcy estate. Whether or not Palmer should have recovered his total fees and costs or only part because the corporate wrongdoing uncovered included also the same wrongdoing by his predecessor (Warren C. White) we need not decide, as the defendants have not contested the award of attorneys' fees on the derivative claim on appeal.

[13]The green ledger sheets showed cash receipts for 1987 approximately one third greater than those shown on records given to Fayette's accountant and used for tax filing purposes for that year. After receiving extensive additional evidence of Fayette's procedures for handling its cash receipts, the judge concluded that Fayette's principals, in essence, had kept two sets of books and that they had wrongfully siphoned off approximately one third of the cash receipts from 1986 to 1989.

ties to tamper with it. They argue further that the judge's reliance on the 1987 ledger sheets to determine the amount of skimmed profits for the missing years was unwarranted and that the amounts were based on surmise and speculation.

The judge made extensive findings concerning the accuracy of exhibit 34 that sufficiently meet the preconditions for admitting a business record under G. L. c. 233, § 78. Those findings are supported by evidence within the transcript. Defendant Rafferty, who was very familiar with exhibit 34's contents, did not testify that anyone, other than himself, had tampered with or altered the figures. The judge also found credible the testimony of Fayette's office manager, Timothy Buck, who authenticated exhibit 34 as a record regularly kept by the business, most of whose entries were in Buck's own handwriting. Upon instructions from one or another of the three principals, Buck maintained the green ledger sheets throughout the years in question and made most of the entries on exhibit 34. The judge disbelieved Rafferty's contrary testimony that exhibit 34 did not reflect Fayette's actual cash receipts but showed instead what those receipts would have been had the lounge operated by Fayette collected the regular five-dollar cover charge from every single patron. Credibility determinations, of course, lie exclusively within the province of the fact finder — here the trial judge — who is free to believe one witness and disbelieve another. *Commonwealth* v. *Ianello*, 401 Mass. 197, 202 (1987).

The judge's calculations, using exhibit 34, of the likely amount of money the principals had raked from Fayette's tills in 1986, 1988, and 1989 did not rest upon unfounded speculation and surmise. Rather, he reasonably could infer from all the evidence, including exhibit 34, that, in each of those years, as in 1987, the three principals had siphoned off roughly the same percentage (thirty-three percent) of Fayette's gross receipts and had then divided up the spoils in proportion to their respective ownership interests in the corporation before paying creditors and filing taxes. "In the case of business torts 'an element of uncertainty in the assessment of damages is not a bar to their recovery.' " *Datacomm Interface, Inc.* v. *ComputerWorld, Inc.*, 396 Mass. 760, 777 (1986), quoting *National Merchandising Corp.* v. *Leyden*, 370 Mass. 425, 430 (1976). See *Jay Edwards, Inc.* v. *New England Toyota Distributor, Inc.*, 708 F.2d 814, 821 (1st Cir.), cert.

denied, 464 U.S. 894 (1983) ("Damages for lost profits need not be proved with mathematical certainty, provided an award has a rational basis in the evidence").

The judge aptly observed that any lack of certainty over the precise measure of skimmed assets was directly attributable to the defendant principals, whose shell games and false testimony were calculated in large measure to hide evidence of Fayette's true financial worth between 1986 and 1989. Wrongdoers may not complain that damages cannot be measured precisely when they are responsible for that difficulty. *McKenna* v. *Begin,* 5 Mass. App. Ct. 304, 311 (1977). The measure of damages awarded to the trustee on behalf of the corporation's bankrupt estate shall stand.

4. *Fraudulent conveyances.* Palmer cross appeals from that part of the final amended judgment dismissing counts VII through XI of the Palmer case. The five dismissed counts charge that, in anticipation of this litigation, the two defendant principals, Rafferty and McCallion, conveyed various Massachusetts real estate holdings owned by one or both of them into five separate real estate trusts controlled by or through McCallion so as to avoid or defeat creditors.[14] See generally G. L. c. 109A, pertaining to fraudulent transfers of property, and specifically G. L. c. 109A, § 7,[15] concerning conveyances made with intent to defraud. The judge concluded that the two defendants had already decided in 1986 — well before this litigation — to convey or transfer their Massachusetts holdings in order to acquire real estate in Flor-

---

[14]The conveyances in question all were made on June 24, 1988, in five separate declaration of trust instruments, each naming McCallion as sole trustee. The record does not include the schedule of beneficial interests for any of the trusts. The res of each trust was provided for in a separate deed, executed on June 24, 1988, by McCallion and Rafferty together or by McCallion individually. The two individuals conveyed to one of the trusts their common title to one condominium unit. McCallion conveyed his interests in two other units to two of the other trusts, and he also assigned a mortgage he held on yet another unit to the fifth trust. Finally, McCallion granted two mortgages on the same date, encumbering two of the units he owned as trustee. The consideration listed in each of the three deeds that conveys unit title is "less than one hundred ($100.00) dollars paid."

[15]General Laws c. 109A, § 7, provides: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

ida. He further concluded that the proceeds from the eventual sale of the defendants' Massachusetts properties, and not the skimmed assets, were used to finance the Florida acquisitions and that the 1988 conveyances were not done to delay, hinder, or defraud creditors.

The judge's ultimate conclusion that the June 24, 1988, conveyances were unaccompanied by a fraudulent intent on the part of either defendant rests largely upon two subsidiary conclusions, both legally flawed. The judge should have considered the defendants' intent at the time of the alleged fraudulent conveyances, not merely their intent at some other time in the past. See *Federal Deposit Ins. Corp.* v. *Anchor Properties*, 13 F.3d 27, 31-32 (1st Cir. 1994) (interpreting G. L. c. 109A, § 7, and referring only to the time of the transfer). Even if the defendants decided in 1986, two years prior to the conveyances in question, to sell their Massachusetts real estate holdings and use the proceeds to purchase real estate in Florida, that fact alone would not preclude a determination that they possessed fraudulent intent at the actual time of the conveyances. Further, it is irrelevant that the Florida real estate acquired by them may have been purchased from the proceeds of the sale of their Massachusetts holdings, rather than from funds skimmed from Fayette; it was not necessary to show that the purchases were from Fayette's skimmed assets. Rather, under G. L. c. 109A, § 7, it is a defendant's "actual intent" to place assets beyond the reach of present and future creditors that makes a conveyance "fraudulent" as to such creditors. Here, prior to June, 1988, both Rafferty and McCallion held assets in their personal names. But for the transfers of June 24, 1988, those assets might have been available to the judgment creditors to partially satisfy the judgment. The judge, therefore, should have focused on Rafferty's and McCallion's "actual intent" in making the 1988 conveyances.

"Actual intent" is usually proven circumstantially and inferentially. See *Federal Deposit Ins. Corp.* v. *Anchor Properties*, 13 F.3d at 32. Indicia or "common badges of fraudulent intent at the time of a transfer are: (1) actual or threatened litigation against the debtor; (2) a purported transfer of all or substantially all of the debtor's property; (3) insolvency or other unmanageable indebtedness on the part of the debtor; (4) a special relationship between the debtor and the

transferee; and (5) retention by the debtor of the property involved in the putative transfer." *Ibid.,* citing *Max Sugarman Funeral Home, Inc.* v. *A.D.B. Investors,* 926 F.2d 1248, 1254 (1st Cir. 1991). Lack of, or inadequate, consideration is also an indication of possible fraudulent intent. *Federal Deposit Ins. Corp.* v. *Anchor Properties, supra.*

At the least, evidence in the record covering the period when the conveyances were made suggests a colorable claim under G. L. c. 109A. Palmer might have prevailed on the claims of fraudulent transfers had the judge eyed the evidence through the proper legal lenses. The portion of the judgment dismissing counts VII through XI of the Palmer case must be reversed and the matter remanded for further proceedings. Because the bankruptcy trustee, having been added as a party after the trial, had no opportunity at the trial to present evidence relevant to the fraudulent conveyance claims, he shall be afforded the opportunity on remand to present any *new* evidence bearing on those claims, to which new evidence the defendants may respond. See *Perkins Sch. for the Blind* v. *Rate Setting Commn.,* 383 Mass. at 830.

Accordingly, the portion of the judgment in the consolidated cases that dismisses counts VII-XI of the complaint in Superior Court civil action 89-5062 is reversed and that case is remanded for further proceedings consistent with this opinion. The judgment is otherwise affirmed.

*So ordered.*