van Gestel, J.
This matter is before the Court on a motion by the defendants-in-counterclaim Avon Tape, Inc. (“Avon”) and American Shoe Shank Co., Inc. (“American Shoe”), and the third-party defendant, Howard D. Shuman (“Howard”), seeking summary judgment on the “counterclaims” brought against them by the defendant, Stephen J. Shuman (“Stephen”).[3] There are six counts in the amended counterclaim: Count I for breach of fiduciary duty; Count II for an accounting; Count III for conversion; Count IV for violation of G.L.c. 93A; CountV for a declaratory judgment; and Count VI for breach of the covenant of good faith and fair dealing.
This is an unfortunate suit by two closely-held corporations, founded and controlled by Howard, against his son, Stephen, over matters relating to the businesses, in which Stephen was once employed and/or had interests. Stephen has returned the fire with his counterclaims, upping the ante by naming Howard personally. The Court suspects that personal issues, rather than business considerations, may be dominating the situation and clouding the ability of father and son to reach an amicable resolution privately, rather than to slug it out in court.
BACKGROUND
For purposes of the present motion, the Court accepts the following facts as not being in dispute.
Howard, the father of Stephen, is the founder, sole director and CEO of Avon and American Shoe. Howard owns all of the stock in American Shoe and 88% of the stock in Avon. The remaining 12% of the Avon stock is owned by Stephen, subject to a Buy/Sell Agreement. Pursuant to the Buy/Sell Agreement, Stephen is entitled to purchase Howard’s majority interest in Avon upon Howard’s death.
Also pursuant to the Buy/Sell Agreement, Avon is required to purchase Stephen’s 12% interest in Avon, at book value subject to certain adjustments, within 60 days of Stephen’s retirement from the company.
Stephen was also an employee of Avon until his resignation on August 6, 2002.
Similarly, Stephen was an employee of American Shoe, from which he also resigned on August 6, 2002. Additionally, Stephen had an option to purchase Howard’s stock in American Shoe upon Howard’s death. Stephen, however, does not own any shares in American Shoe.
The redemption provision in the Buy/Sell Agreement reads as follows.
Redemption. The parties hereto agree that, upon the occurrence of a Triggering Event with respect to a Shareholder, as hereinafter defined, the Corporation shall buy, and such Shareholder (or the legal representatives of his estate) shall sell, all of his shares, upon the terms and conditions hereinafter set forth.
*392 a. Triggering Event For the purposes of this paragraph, a Triggering Event shall mean: . . . (ii) the Retirement of a Shareholder . . .
“Retirement” is defined to mean, among other things, “the cessation of a Shareholder’s employment by the Corporation for any reason.”
Further: “The closing of any redemption provided for [in the Buy/Sell Agreement] shall take place at the office of the Corporation sixty (60) days after the occurrence of a Triggering Event, or at such other time and place as the Corporation and the Selling Shareholder or his legal representatives may agree.”
By a letter dated June 20, 2003, Howard advised Stephen “that the corporate accountants had not yet determined the purchase price [of Stephen’s Avon stock] and .. . that [Howard] would let [Stephen] know when that determination has been made.”
Almost 10 months later, by a letter dated April 15, 2004, counsel for Howard wrote counsel for Stephen, advising that the accountants had completed their work and had determined the purchase price for Stephen’s Avon stock to be $10,447.35. Howard’s counsel asked for a suggested date for a closing. On April 21, 2004, counsel for Stephen responded with a one-sentence letter stating, “In regard to your letter of April 15 — would you please send me a copy of the calculations prepared by the ‘corporate accountants’ you reference.”
The parties’ papers suggest that the closing on the purchase of Stephen’s Avon shares has not occurred, but do not reveal what, if anything, concerning that issue happened after April 21, 2004.
The amended counterclaim recites, in general, that Stephen and Howard worked together in a relationship not uncommon in a family-controlled business. When Stephen would ask for a raise in pay, Howard is alleged to have told Stephen “that they were building the business together and monies for raises weren’t available.”
Stephen further alleges that he resigned when “he learned the full extent of his father’s bad faith conduct.” Stephen then lists an array of things that he claims were improper acts by his father, including: diversion of corporate receivables to a Swiss bank account; charging Avon and American Shoe as corporate expenses charges for personal matters; draining profits by taking excessive bonuses and salary; conspiring with third parties to bill personal expenses to the companies; and paying his wife a $250 per week “no show” salary and health benefits.
Count I charges Howard with breaches of his fiduciary duly and duty of loyalty to Avon, American Shoe and Stephen.
Count II asserts that Howard’s actions have stripped Avon and American Shoe of value, affecting Stephen’s rights under the Buy/Sell and option agreements. This count seeks an accounting and to have Howard repay “each company all monies wrongfully spent, charged, and taken or make an appropriate payment to Stephen of his share of those monies.”
Count III charges Howard with conversion of “assets of business entities in which Stephen has a present or contingent interest,” arid claims that Stephen has been damaged thereby.
Count IV charges that Howard has brought the underlying action for the purpose of injuring Stephen, who is now a competitor, and that Howard “intends to use litigation for the improper purpose of driving Stephen out of business by financially ruining him.” Stephen suggests that these action are a violation of G.L.c. 93A.
Count V asks for a declaratory judgment to the effect that because the 60-day period for closing on the purchase of Stephen’s Avon stock was not met, the Buy/Sell Agreement has been breached, and Stephen may retain his stock.
Count VI alleges that the actions of Howard “violate the inherent obligations of good faith in regard to the Buy/Sell Agreement and the Option Agreement,” causing financial losses to Stephen.
DISCUSSION
“Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law.” M.P.M. Builders, LLC v. Dwyer, 442 Mass. 87, 89 (2004); Kesler v. Pritchard, 362 Mass. 132, 134 (1972). Mass.R.Civ.P. Rule 56(c).
The essence of the grounds for summary judgment on the counterclaims is twofold: (1) that the claims are effectively derivative actions brought on behalf of Avon and American Shoe and Stephen must be a shareholder to bring them; and (2) that the c. 93A claim cannot survive “because this is an intra-organizational dispute.”
The Court will assess the counts somewhat in reverse order, focusing first on the c. 93A claim. In actuality, it reads more like a claim for abuse of process than a claim under c. 93A for an unfair or deceptive act or practice in the conduct of trade or commerce. A reading of the complaint, as amended, however, reveals on its face that the process is not being used to accomplish some ulterior purpose for which the process was not designed or intended, or that was not a legitimate purpose for the particular process employed. See, e.g., Ladd v. Polidoro, 424 Mass. 196, 198 (1997). If an abuse of process claim was intended, it fails on a simple reading of the complaint. Consequently, the Court assesses Count IV as a claim under c. 93A.
To prevail on a c. 93A claim, Stephen must ultimately prove that Howard — the only parly charged in Count IV — was engaged in “trade or commerce” in his dealings with Stephen. However, neither claims by an *393 employee about his employer’s conduct toward him, Manning v. Zuckerman, 388 Mass. 8, 12 (1983), nor transactions and disputes between shareholders in a close corporation, Zimmerman v. Bogoff, 402 Mass. 650, 660 n.1, 662-63 (1988), nor dealings confined to members of a single entity, Szulla v. Locke, 37 Mass.App.Ct. 346, 354 (1982), meet the necessary “trade or commerce” test for a c. 93A claim. At heart, this is an unseemly fight between a father and son over the spoils of a family business. It is not the kind of claim for which c. 93A was enacted. Count IV must be dismissed.
Most of the remaining counts, although suggesting damages to Stephen himself, have a distinct aroma of a shareholder’s derivative suit. For example, Count I charges breaches of duty to Avon and American Shoe, as well as Stephen. Count II asks for an accounting and repayment to the corporations and, in the alternative, to Stephen. Count III seeks recovery of allegedly converted “assets of business entities.” Only Counts V and VI speak solely to claims of Stephen’s, as opposed to claims of the corporations.
Avon, American Shoe and Howard essentially argue that several of the counts do not articulate any discrete claims or theories that are uniquely “individual” to Stephen, and that the claims are, in substance, derivative. In Bessette v. Bessette, 385 Mass. 806, 809 (1982), the Supreme Judicial Court spoke to the issue as follows:
The plaintiffs argue that in this case a fiduciary duty is owed directly to them as minority stockholders. They contend that if a majority stockholder received distributions from a close corporation in the form of an excessive salary and payments on notes for which the corporation received no consideration, individual stockholders may recover on their own behalf. See Donahue v. Rodd Electrotype Co., [367 Mass. 578,] 578. However, our holding in Donahue applies if “[i]t would be difficult for the plaintiff ... to establish breach of a fiduciary duty owed to the corporation. . .” Supra at 589 n. 14.
The SJC went on to hold that the “judge correctly ruled that the plaintiffs could assert their claims only as a stockholders derivative action.” Bessette, supra, 385 Mass. at 810.
What is presented here in Counts I, II and III of the counterclaims is similar to the situation as in Bessette, and should be treated accordingly. See also Crowley v. Communications for Hospitals, Inc., 30 Mass.App.Ct. 751, 764-65 (1991). A shareholder of Avon or American Shoe would not find it difficult to establish these various claims of the corporations and, therefore, these claims should be treated as derivative actions.
To bring a shareholder’s derivative suit, the claim must be brought on behalf of the corporation “by one or more shareholders.” Mass.R.Civ.P. Rule 23.1. See, e.g., Schaeffer v. Cohen, Rosenthal, Price, Mirkin, Jennings & Berg, P.C., 405 Mass. 506, 513 (1989); Besette, supra 385 Mass. 809-10.
Stephen concedes that he is not, and never has been, a shareholder of American Shoe. His option to purchase American Shoe stock upon Howard’s demise does not make him a current shareholder for purposes of bringing a derivative action. See, e.g., Parkinson v. West End St. Ry. Co., 173 Mass. 446, 448 (1899); Pratt v. American Bell Telephone Co., 141 Mass. 225, 229-30 (1886). Stephen cannot, therefore, front a derivative claim on behalf of American Shoe.
Stephen’s status as a shareholder of Avon is less clear. He resigned from Avon on August 6,2002. This suit was not filed until January 7, 2004. Under the Buy/Sell Agreement, Avon was obliged to purchase all of Stephen’s stock in Avon, with a closing to occur in 60 days from his resignation. That closing, insofar as this Court understands, has yet to occur. Stephen argues, therefore, that there is a breach of the Buy/Sell agreement by Avon and he remains a shareholder.
The issue of breach of contract has not been thoroughly briefed or argued. At this stage, this Court has serious doubts as to whether there was a breach of the Buy/Sell Agreement. It sees no section of the agreement suggesting that time was of the essence. Indeed, since there is a very real possibility that a death of a shareholder could be a Triggering Event, and the company would have to deal with an estate’s representative, in all probability no representative with authority to act would be in place within 60 days of the death. Further, the Court has not been shown any demands or complaints by Stephen over the timing of the closing here. This does not sound like a breach of contract situation. See, e.g., Blum v. Kenyon, 29 Mass.App.Ct. 417, 420-21 (1990).
But, even assuming there to be no breach, following the logic of the venerable cases of Parkinson v. West End St. Ry. Co. and Pratt v. American Bell Telephone Co. cited above, the ownership of Stephen’s 12% shareholder interest in Avon has yet to change hands. Stephen, therefore, can serve as a shareholder for purposes of any derivative claims brought on behalf of Avon.
The matter does not end here, however. In order to bring a derivative suit, Stephen must comply with the provisions of Mass.R.Civ.P. Rule 23.1, including the more detailed pleading requirements and issues relating to making a pre-suit demand or explaining such a demand’s futility. See, e.g., Harhen v. Brown, 431 Mass. 838, 844 (2000); Bartlett v. New York, N.H., & H.R.R. Co., 221 Mass. 530, 532 (1915). None of these issues was raised or briefed upon the present motion. They are, therefore, left for another day.
ORDER
For the foregoing reasons, the Motion of Defendants-In-Counterclaim, Avon Tape, Inc. American Shoe Shank Co., Inc. and Howard D. Shuman, for Summary Judgment Upon Counterclaims, (Paper #12), is: (1) ALLOWED as to Count IV in its entirety, and as to Counts I, II and III insofar as they relate to derivative claims on behalf of American Shoe Shank *394 Co., Inc.; and (2) DENIED in its entirely as to Counts V and VI, and as to Counts I, II and III insofar as they relate to derivative claims on behalf of Avon Tape, Inc.
As to any claims that remain in the case after the action on this motion, nothing decided here shall be deemed the law of the case as to any aspect of those claims.

The defendant’s answer included certain “counterclaims” against Avon, American Shoe and Howard. Avon and American Shoe are the plaintiffs. Howard is not. Thus, the Court will treat the claims as counterclaims as against Avon and American Shoe and as third-party claims as against Howard.
Further, since the filing of the motion for summary judgment, there has been an amendment to the complaint, and a responding amended answer and “counterclaims,” have been filed. The Court will treat the present motion and the responses thereto as being directed at the amended “counterclaims.”