Leibensperger, Edward P., J.
The question presented by this motion appears, according to the parties, to be one not directly addressed by the Massachusetts Supreme Judicial Court and Appeals Court. Must shareholders of a Massachusetts company who wish to challenge a decision by the board of directors to recommend a transaction that will effect the sale of the company at an allegedly inadequate price, bring their challenge as a derivative claim on behalf of the corporation or may they bring the claim directly? Here, plaintiffs are a putative class of shareholders in EMC Corporation. They commenced these consolidated actions as direct claims. Defendants are the members of the board of directors of EMC (“the EMC Defendants”).[1] The EMC Defendants move to dismiss the amended complaint on the ground that the claim must be asserted as a derivative claim on behalf of the corporation. Because it is undisputed that plaintiffs do not assert a derivative claim and, thus, have not complied with the statutory requirement for a derivative claim of pre-suit demand on the board of directors, a determination that the claim asserted is one on behalf of the corporation results in dismissal of the actions.
BACKGROUND
The First Amended Class Action Complaint (“FACAC”) filed in the lead case in this consolidated action (CA 2015-3130-BLS 1) alleges the following.
Plaintiffs in the consolidated actions are holders of the common stock of EMC. They seek to bring the actions on behalf of a class consisting of “all other shareholders of EMC . . . who are or will be deprived of the opportunity to maximize the value of their shares of EMC as a result of the breaches of fiduciary duty and other misconduct complained of herein.” FACAC ÍT127. Plaintiffs assert a single substantive claim in Count I: the directors of EMC (the EMC Defendants) violated their fiduciary duties, allegedly owed to both EMC and the shareholders, by “(i) failing to take steps to maximize the value of EMC stock; and (ii) agreeing to unreasonably preclusive deal protection provisions, thereby hindering any potential bid that may have been superior to the ‘Proposed Transaction.’ ” FACAC ¶139.[2]
The “Proposed Transaction” that is the subject of the claim is an Agreement and Plan of Merger unanimously agreed to by the EMC Defendants. The EMC Defendants voted to recommend to shareholders a positive vote, after required disclosures, to sell EMC to Dell, Inc. EMC and Dell announced the acquisition on October 12, 2015. The expected closing of the transaction is in the middle of 2016. FACAC ¶¶58, 59. Under the terms of the deal, each shareholder of EMC •will receive $24.05 per share in cash plus an estimated 0.111 shares of “tracking stock” of VMware, Inc. (a company owned 80% by EMC). “The Proposed Transaction is valued at approximately $64 billion.” FACAC ¶¶1 and 2.
EMC is a Massachusetts corporation. Its stock is widely traded on the NASDAQ stock exchange. FACAC ¶25. EMC is described as a global leader in enabling businesses to deliver technological services such as the storage and management of data and information. FACAC ¶25. While the amended complaint is not specific about the process for completion of the proposed transaction, the Massachusetts Business Corporation Act, M.G.L.c. 156D (the “Act”), mandates that a plan of merger or share exchange, adopted by the board of directors, is subject to a shareholder vote to approve. Act, §11.04. Under the federal securities laws, the vote of shareholders will occur after preparation of a proxy statement or prospectus that will be filed with the Securities and Exchange Commission.
DISCUSSION
To survive a motion to dismiss, a complaint must set forth the basis for the plaintiffs entitlement to relief with “more than labels and conclusions.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636, quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). At the pleading stage, Mass.R.Civ.P. 12(b)(6) requires that the complaint set forth “factual ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief . . .” Id., quoting Bell Atl. Corp., 550 U.S. at 557. The court must, however, accept as true the allegations of the complaint and draw every reasonable inference in favor of the plaintiff. Curtis v. Herb Chambers 1-95, Inc., 458 Mass. 674, 676 (2011).
I. Plaintiffs’ Claim
In their amended complaint, plaintiffs claim that the proposed deal “fails to maximize shareholder value.” FACAC ¶2. Plaintiffs describe EMC as having *118 an “unconventional ‘federation’ structure” such that its parts (various subsidiaries and divisions) are worth more if sold separately than if the company is sold as a whole. FACAC ¶3. Allegedly, certain shareholders have advocated to the board of directors that the company be broken up and the parts sold separately. The board refused such entreaties. Instead, the board approved the proposed deal with Dell which may result in the company being sold as a whole. According to plaintiffs, the proposed deal reflects a “conglomerate discount” in the proposed price that is unfair to shareholders. FACAC ¶¶36, 75-87. Plaintiffs also claim that the terms of the proposed deal agreed to by the EMC Defendants, such as an “onerous termination fee” will negate the provisions of the deal that allow EMC to “shop” the company or its parts to other bidders. FACAC ¶107. In sum, all of plaintiffs’ allegations amount to a complaint that the EMC Defendants did not negotiate favorable terms in the deal with Dell so as to maximize the value of plaintiffs’ shares. The claim is cast as one for breach of fiduciary duty. Plaintiffs contend that the EMC Defendants owe them, as holders of publicly traded stock, a fiduciaiy duty to “maximize shareholder value.” FACAC ¶2.
A significant portion of the amended complaint is devoted to allegations regarding the motivations of EMC’s CEO and member of the board of directors, defendant Joseph M. Tucci. Plaintiffs attribute the decision to sell the company as a whole rather than in parts to Tucci’s philosophical and financial reasons. Philosophically, Tucci viewed EMC as “his baby” and did not want to see it ripped apart. FACAC ¶51. Financially, Tucci will allegedly receive payments amounting to $27 million pursuant to “change in control” provisions in his compensation agreement with EMC if the deal is closed. FACAC ¶52. Tucci allegedly asserted influence on the board of directors such that they sat “idly by” and approved the proposed deal at Tucci’s insistence. FACAC ¶106.
It is important to note what the amended complaint does not allege. There is no allegation that any shareholder of EMC, including any of the EMC Defendants, will receive more per share of EMC in the deal than any other shareholder. There is no allegation that any one shareholder or group of shareholders (whether such shareholders are members of the board of directors or not) controls the company such as to assure a positive vote on the proposed deal. There is no allegation that defendants failed to disclose material information regarding the transaction. Finally, with respect to the obligation of the company to pay $27 million to Tucci upon a change in control, there is no allegation that the obligation was created as part of the deal to sell the company to Dell. Instead, it must be inferred that the obligation was created by the board of directors as part of Tucci’s compensation package, unrelated to a vote to approve the proposed transaction.
II. Fiduciary Duty
The theory of plaintiffs’ case is that the EMC Defendants owe a fiduciaiy duty directly to them as shareholders in the context of the approval by the board of directors of the proposed transaction to sell EMC. Absent such a duty, the action must be dismissed.
The Legislature set forth the standard for the discharge of a director’s duties in §8.30 of the Act. A director must act “in a manner the director reasonably believes to be in the best interests of the corporation.” §8.30(a)(3). While the director may consider “the long-term and short-term interests of. . . its shareholders” he must do so only in the context of what he considers the best interests of the corporation. Id. The director is entitled to protection from suit if he acts in accordance with this standard. “A director is not liable for any action taken as a director, or any failure to take any action, if he performed the duties of his office in compliance with this section.” §8.30(c).
The EMC Defendants argue that the legislative command of §8.30 ends the inquiry. Pursuant to that section of the Act “EMC’s directors owe a fiduciaiy duly defined by statute to the corporate entity EMC, and not to any other person or entity.” EMC Defendants’ Memorandum of Law in Support of Their Motion to Dismiss, p. 1. Because the EMC Defendants owe no duties directly to the shareholders, the case must be dismissed.[3]
At oral argument, the EMC Defendants acknowledged two exceptions to their blanket statement that directors owe no duties to shareholders. First, Massachusetts law recognizes a special rule for close corporations. While “(t]he directors of a corporation stand in a fiduciaiy relationship to the corporation . . . [i]n the case of a close corporation, which resembles a partnership, duties of loyalty extend to shareholders . . .” Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 528-29 (1997). Second, where a controlling shareholder and director proposes a self-interested transaction that is to the detriment of certain shareholders but to the benefit of other shareholders, a direct action by the adversely affected shareholders is allowed to proceed. Coggins v. New England Patriots Football Club, Inc., 397 Mass. 525, 533-34 (1986). The EMC Defendants contend that neither of those exceptions applies to the facts of this case.
I agree that the exceptions acknowledged by the EMC Defendants to the “no fiduciaiy duty to shareholders” statement do not apply to the facts of this case. This case does not involve a close corporation (Demoulas) and does not involve a transaction proposed by a director/majority shareholder that affects minority shareholders adversely as compared to the majority shareholder (Coggins). But the existence of those exceptions, recognized by the Supreme Judicial Court, suggests a more nuanced examination of the context of a claim for breach of fiduciaiy duty by a director to a shareholder.
*119 Similar to the EMC Defendants’ blanket statement of “no duty” is plaintiffs’ assertion that a director always owes a fiduciary duty to shareholders. Plaintiff IBEW Local No. 129 Benefit Fund’s Opposition to Motion to Dismiss, p. 9. Such abroad assertion would mean that shareholders of public companies could sue members of the board of directors directly even if the directors acted in the best interest of the corporation. Such exposure to a director is directly contrary to subsection (c) of §8.30. Plaintiffs’ proposition is also contrary to Massachusetts case law. Bessette v. Bessette, 385 Mass. 806, 809 (1982) (shareholder’s direct claim dismissed in favor of derivative action asserting corporation’s right to recover); Crowley v. Communications for Hospitals, Inc., 30 Mass.App.Ct. 751, 764-65 (1991) (claim of excessive compensation and “freeze out” required to be brought as derivative action). For their proposition, plaintiffs point to the “exceptions” noted above, plus two additional arguments. They reference §2.02(b)(4) of the Act where, in describing what provisions may be allowed in a company’s articles of organization, the Legislature authorizes a company to limit the fiduciary duties of directors so long as the limitation does not apply to “any breach of the director’s duty of loyalty to the corporation or its shareholders . . .” §2.02(b)(4)(i) (emphasis added). Plaintiffs say that section implicitly recognizes a fiduciary duty running from directors to the shareholders. In addition, plaintiffs cite Chokel v. Genzyme Corporation, 449 Mass. 272, 278 (2007). There, the Supreme Judicial Court stated flatly, “[directors owe a fiduciary duty to their shareholders.”
I reject the rigid “duty” or “no duty” positions of the parties. Instead, the question of whether directors of a Massachusetts corporation owe a direct duty to shareholders depends upon the nature and circumstances of the challenged action.
The Court’s statement in Chokel, quoted above, was followed immediately by citation to Demoulas, 424 Mass, at 528-29. It is important to look at the entirety of the relevant paragraph from Demoulas:
The directors of a corporation stand in a fiduciary relationship to the corporation. They owe to the corporation both a duty of care and, more significantly for this case, a paramount duty of loyalty. ‘They are bound to act with absolute fidelity and must place their duties to the corporation above every other financial or business obligation . . . They cannot be permitted to serve two masters whose interests are antagonistic.”
Demoulas, 424 Mass, at 528 (citations omitted).[4] Thus, the Court recognized that a director’s paramount duty is to the corporation. That principle is entirely consistent with §8.30 of the Act.[5] While a director may, pursuant to §8.30(a)(3), consider the long-term and short-term interests of shareholders including, in a merger context, “whether the interests may be best served by the continued independence of the corporation,” the director must do so only in the context of what he reasonably believes is in the best interest of the corporation. A director who fulfills his duty to the corporation cannot be held liable under subsection (c) of §8.30. Moreover a director in a merger context is inevitably faced with the fact that some shareholders want, or will want, the transaction proposed while other shareholders, like these plaintiffs, oppose the transaction. As stated in Demoulas, the director cannot be permitted to serve two masters whose interests are antagonistic. Instead, he must fulfill his duties to the corporation, not to any subset of shareholders. In sum, in the context of a decision to approve a plan of merger where all shareholders will receive identical consideration for their shares, a director’s fiduciary duties can run only to the corporation. In re PHC, Inc. Shareholder Litigation, 2012 WL 1195995 (D.Mass., O’Toole, J., 2012) (under Mass, law, to assert direct claim shareholder must assert an injury distinct from that of other shareholders, such as receiving unequal consideration).
Further, the complaint in this case is that the EMC Defendants failed to maximize shareholder value by voting for the proposed transaction. Maximizing the value of the corporation is a seminal duly of the board of directors to the corporation, tempered only by the Legislature’s express allowance to a director to consider the interests of “employees, suppliers, creditors and customers, the economy of the state, the region and the nation, community and societal” factors in the context of a merger transaction. §8.30(a) (3). Where, as here, the proposed transaction constitutes a cash out of 100% of the equity of EMC, and all shareholders are treated equally, there is no distinction between “shareholder value” and the “corporation’s value.” “Shareholder value” is simply derivative of the corporation’s value. The plaintiffs do not allege any harm distinct from the alleged harm to the corporation. If the action by the board of directors effects a diminution of the full and fair value of EMC, it is the corporation that is harmed in the first place and the shareholders are harmed only indirectly. Frank v. Fowler, 456 Mass. 317, 332-33 n.23 (2010) (claim of diversion of business opportunity effecting a diminution of value in the entity must be brought as a derivative action). In a cash out merger where the claim is failure to maximize the value of a corporation, a direct action by shareholders must be dismissed. See e.g., Henkel v. Aschinger, 962 N.E.2d 395, 403 (Ct. of Common Pleas, Ohio 2012) (“A plaintiff-shareholder does not have an independent cause of action where there is no showing that he has been injured in any capacity other than in common with all other shareholders as a consequence of the alleged wrongful actions of a third parly directed towards the corporation” (citation omitted)).[6]
Finally, plaintiffs contend that this action should not be dismissed because to do so will deprive plaintiff of a remedy. They note that once the proposed trans *120 action closes their derivative standing will be extinguished. See Billings v. GTFM, LLC, 449 Mass. 281, 296 (2007). This argument is unpersuasive. Plaintiffs have presumptively adequate remedies provided by law at this time, before their standing is extinguished. They may vote their shares against the proposed transaction and may even launch a proxy contest to persuade other shareholders to vote against the plan of merger. With respect to the specific claims in the amended complaint, they may follow the procedures under §7.42 of the Act potentially to bring their claims in a derivative action. Indeed, the universal demand requirement of §7.42 is intended “to allow the directors the chance to occupy their normal status as conductors of the corporation’s affairs. . . [where] [corporate management may be in a better position to pursue alternative remedies, resolving differences without burdensome and expensive litigation.” Official Comment to §7.42. There is no allegation in the amended complaint that the present timetable for the completion of the plan of merger precludes these remedies.
ORDER
Because these consolidated actions assert claims by shareholders directly when such claims must be brought derivatively on behalf of the corporation, the motion to dismiss by the EMC Defendants must be ALLOWED.

 Other defendants named in the caption are the buyer of EMC and related acquisition entities: Dell, Inc., Denali Holding, Inc. and Universal Acquisition Co. No claims are asserted against these entities. Plaintiffs represent that these defendants are named only because they would be affected by plaintiffs’ prayer to enjoin the merger.

 he amended complaint also contains a Count II whereby plaintiffs seek to enjoin the proposed transaction. No motion for preliminary injunction has been filed.

 he EMC Defendants’ position is supported by the law in some other states with statutory provisions similar to Massachusetts regarding a director’s duty to act in the best interest of the corporation. See e.g., DCG&T ex rel Battaglia/Ira v. Knight, 68 F.Sup.3d 579, 586 (E.D.Va. 2014) (applying Virginia law).

 In Demoulas, the Court went on to recognize that in a close corporation, for reasons special to such companies because they resemble partnerships, a director’s duty of loyally extends to shareholders. Demoulas, 424 Mass, at 529. While Choice! was not a case involving a close corporation, the Court’s statement regarding fiduciary duties, and its immediate citation to Demoulas, may be explained as recognition of the fact that Chokel and the putative class represented a subset of shareholders alleging that the transaction affected them differently (i.e., antagonistically) from all other shareholders of the corporation. Because the Court concluded that a contract dictated the terms of the transaction, it did not have to reach the issue of whether the decision of the board could have breached a fiduciary duty.

 The Court’s description of the fiduciary duties of directors in Demoulas is also consistent with the provision in §2.02(b)(4) of the Act implicitly recognizing a possible duty of loyalty, only, running from a director to a shareholder in certain circumstances such as in a close corporation.

 Plaintiffs contend that under Delaware law shareholders may have standing to prosecute a direct claim challenging a merger. Parnes v. Bally Entertainment Group Corp., 722 A.2d 1243, 1245 (Del. 1999) (direct claim allowed after close of the transaction when shareholders no longer had standing to bring a derivative claim). A more recent case from Delaware suggests that Delaware law on the direct v. derivative distinction had been “confusing.” Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1035 (Del.Supr.Ct. 2004). Tooley held that “the issue must turn solely on . . . (1) who suffered the alleged harm (the corporation or the suing stockholders, individually; and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?” Id. at 1033 (emphasis in original). That test is consistent with my conclusion, above, that in the circumstances of this case it is the corporation, not individual shareholders, who will suffer harm if the directors do not obtain adequate value in the sale.