Crawford *v.* Cambridge.

PETER A. CRAWFORD *vs.* CITY OF CAMBRIDGE.

No. 86-1303.

Middlesex.    October 8, 1987. — November 12, 1987.

Present: GREANEY, C.J., GRANT, & KASS, JJ.

*Motor Vehicle*, Parking. *Administrative Law*, Agency's interpretation of regulation. *Regulation*.

Dismissal of a parking violation notice issued to a motorist under a Cambridge traffic regulation providing that a violation occurs if a person parks at a curb loading zone "during hours when the provisions applicable to such zones are in effect" was required by circumstances indicating that the motorist had parked his automobile, at about 9:30 P.M., at a point on a street in Cambridge marked by a sign which read, "Tow Away Zone — No Parking — Loading Zone," but which contained no statement, as required by the local traffic regulation, of the hours during which the restriction was applicable. [48-50]

CIVIL ACTION commenced in the Superior Court Department on February 28, 1985.

The case was heard by *Hiller B. Zobel*, J., on a motion for summary judgment.

*Thomas J. Urbelis* for the defendant.
*Peter A. Crawford*, pro se.

KASS, J.    Perhaps it ought not to come as a surprise that, in the era of the internal combustion engine, a parking violator and a municipality try to reenact the story of David and Goliath.

On November 15, 1984, a Thursday, at about 9:30 P.M., Peter Crawford parked his automobile on Winthrop Street, Cambridge, in a loading zone. Later that night he received a ten-dollar parking ticket. Crawford protested that the loading zone was improperly marked and that he had committed no violation, a claim he pressed, in accordance with G. L. c. 90, § 20A ½, before the parking clerk of Cambridge. The parking clerk was unmoved, and Crawford, as was his right under the

seventh paragraph of § 20A ½, sought judicial review in the Superior Court under the State Administrative Procedure Act, i.e., in accordance with G. L. c. 30A, § 14. In that forum Crawford prevailed on a motion for summary judgment (we do not dwell on procedural detours taken by the parties). The ground stated by a Superior Court judge was that the city had failed to post the parking restriction in accordance with its own regulations.

We turn to the details. Section 15.1 of Cambridge's traffic regulations (1983 ed.) provides: "The Traffic Director is hereby authorized to determine the location of passenger and freight curb loading zones and shall place and maintain appropriate signs indicating the same and stating the hours during which the provisions of this section are applicable." The message on the sign marking the stretch of street on which Crawford parked read: "Tow Away Zone — No Parking — Loading Zone." There was no statement, as § 15.1 of the traffic regulations required, of the hours during which the restriction was applicable. A violation occurs, under § 15.2(a), if a person parks at a curb loading zone "during hours when the provisions applicable to such zones are in effect."

In the absence of posted times, Crawford argues, there is no valid loading zone, and he was in all events entitled to conclude, without a marking to the contrary, that the restriction did not apply at night when deliveries are less typically made. For its part, the city takes the position that the natural consequence of failing to post the times of the loading zone restriction is that it is a loading zone at *all* times.

No doubt, as the city argues, the ordinary motorist, seeing a sign that said, "No Parking — Loading Zone," would shy from parking there. The city may not, however, assume that motorists are ignorant of the regulation which requires the posting of times at a loading zone, any more than a citizen may claim exemption from an ordinance because he was not aware of it. Once a regulation or procedure is published, "[t]here is no way of assuming that . . . some alert taxpayers or their lawyers have not relied on it." *United States* v. *Leahey*, 434 F.2d 7, 11 (1st Cir. 1970).

The city's primary contention in support of the ticket issued to Crawford is that the city, acting through its traffic director (Cambridge Traffic Regulations §§ 4.1, 4.2, 15.1 [1983 ed.]), may interpret its own regulations and, accordingly, if it has interpreted posting no time to mean all times, that interpretation is entitled to deference. Although an agency's reasonable interpretation of its own regulations, if consistently applied, receives respect from a court, that principle is one of deference, not abdication. Compare *Northbridge* v. *Natick*, 394 Mass. 70, 74 (1985), and *She Enterprises, Inc.* v. *State Bldg. Code Appeals Bd.*, 20 Mass. App. Ct. 271, 278 (1985), with *Finkelstein* v. *Board of Registration in Optometry*, 370 Mass. 476, 478 (1976), and *Board of Educ.* v. *School Comm. of Amesbury*, 16 Mass. App. Ct. 508, 514 (1983).

What the city asks for is not deference but supine abnegation, if not stultification. For whatever reason, the city's traffic regulations mandate that a loading zone sign state the hours during which the restriction applies and it is unacceptable statutory construction to say that duty is discharged by stating no hours at all. See *James J. Welch & Co.* v. *Deputy Commr. of Capital Planning & Operations*, 387 Mass. 662, 666 (1982). A manual of uniform traffic control devices published by the Federal Highway Administration, from which the city has printed excerpts in its record-appendix, advises that parking restriction signs state the time of day the restriction is applicable, if not at all hours. That may be a sound policy and could, if the city chose, be reflected in its regulations. It is not, however, what the currently applicable regulations provide.

At least when they are promulgated and published to govern conduct of the public,[1] a governmental agency is bound to respect its own regulations, as long as they are on the books. *DaLomba's Case*, 352 Mass. 598, 603 (1967). *Chipman* v. *Massachusetts Bay Transp. Authy.*, 366 Mass. 253, 258 n.6 (1974). *Amherst Nursing Home, Inc.* v. *Commonwealth*, 16

---

[1] Possibly an agency regulation governing internal procedures, on which the public is not expected to rely, stands on a different footing. See Note, Violations By Agencies of Their Own Regulations, 87 Harv.L.Rev. 629 (1974).

Mass. App. Ct. 638, 641-642 (1983). Cella, Administrative Law and Practice § 725 (1986). See also Davis, Administrative Law § 7.21 (2d ed. 1979); Note, Violations By Agencies of Their Own Regulations, 87 Harv.L.Rev. 629 (1974). Public confidence in the fairness of policy administration is surely undermined if an agency does not adhere to its own regulations consistently, rather than selectively. *Macioci* v. *Commissioner of Rev.*, 386 Mass. 752, 763 (1982). *United States* v. *Leahey*, 434 F.2d at 10. Cf. *Yick Wo* v. *Hopkins*, 118 U.S. 356, 366-374 (1886).

There is some difficulty shedding the sense that important fundamentals of law are trivialized by application to a ten-dollar parking fine. The case is before us, however, and we are bound to deal with it. At that, for many citizens the regulation of traffic may account for their principal and most frequent encounters with public administration, and so it is important that traffic regulation is seen as consistent and fair.

General Laws c. 90, § 20A ½, provides expressly for judicial review of the action of a parking clerk. There was, therefore, no jurisdictional impediment to hearing the case in the Superior Court. Contrast *Brignoli* v. *Boston*, 1 Mass. App. Ct. 829 (1973). The defendant argues that the parking clerk should have been named as the defendant, as it was his action which was being reviewed. No point, so far as the record discloses, was made of the misnomer below and the point cannot, as the city attempts, be raised for the first time on appeal. *Rice* v. *James Hanrahan & Sons*, 20 Mass. App. Ct. 701, 712 (1985). It is apparent from the record that there was no confusion below about the subject matter or scope of the judicial review.

The judgment ordering dismissal of parking violation # 31136630, issued to Crawford, is affirmed.

*So ordered.*