FECTEAU BENEFITS GROUP, INC. *vs.* PETER L. KNOX
& another.[1]

No. 07-P-970.

Norfolk. April 3, 2008. - July 11, 2008.

Present: TRAINOR, SMITH, & MEADE, JJ.

Further appellate review granted, 452 Mass. 1106 (2008).

*Practice, Civil,* Instructions to jury. *Contract,* Performance and breach, Dam-
ages, Settlement agreement, What constitutes. *Damages,* Breach of contract,
Restitution, Attorney's fees. *Restitution.*

At the trial of a civil complaint alleging, inter alia, breach of contract, there
was no legal error in the judge's charge to the jury on the "benefit of the
bargain" theory of damages, where the instruction was consistent with the
plaintiff's basic request for return of money that it had paid for items that
were never received [208-210]; further, even if the charge amounted to an
error of law (i.e., in failing to instruct on restitution damages, an equitable
remedy not normally available in the context of a claim for breach of
contract), reversal was not required, where, given the facts of the case, the
end result would have been the same as to either theory of recovery [210].
At the trial of a claim for breach of contract, the judge did not err in calling
on the jury to resolve the intent of the parties regarding an ambiguous
clause. [210-211]
At the trial of a claim for breach of contract, the judge did not err in finding
that the terms set forth in an exchange of electronic mail messages between
counsel regarding the settlement of a fee dispute were sufficiently complete
and definite to constitute a binding agreement by which the parties intended
to be bound. [211-213]


CIVIL ACTION commenced in the Superior Court Department on
June 10, 2002.

The case was tried before *Judith Fabricant,* J., and a motion
to enforce a settlement agreement was also heard by her.

*Andrew C. Griesinger* for the defendant.

*Leonard F. Clarkin* for the plaintiff.

SMITH, J. On June 17, 2002, Fecteau Benefits Group, Inc.
(FBG), brought a complaint in the Superior Court against Peter

[1]Peter L. Knox & Associates, P.C.

L. Knox and Peter L. Knox & Associates (collectively, Knox), alleging breach of contract, breach of the implied covenant of good faith, intentional interference with an advantageous business relationship, fraud, and a violation of G. L. c. 93A, arising out of FBG's acquisition of Knox's pension administration business.[2] Knox answered and counterclaimed for breach of a promissory note, declaratory judgment, specific performance, and injunctive relief. Prior to trial, FBG dismissed its intentional interference claim and Knox waived all his claims except breach of the promissory note.

In November, 2004, FBG's remaining claims proceeded to a jury trial, together with Knox's counterclaim for breach of a promissory note. The jury found for FBG on its breach of contract claim and awarded $75,000 in damages.[3]

FBG filed a posttrial motion for an award of attorney's fees, pursuant to an agreement between the parties made when they changed from arbitration to litigation. Knox disputed any such agreement. After a series of electronic mail messages (e-mails) between the parties' attorneys, FBG filed a motion to enforce an alleged settlement agreement regarding attorney's fees. In October of 2005, the trial judge allowed FBG's motion, finding that the parties had reached a definitive agreement on the legal fees issue in the amount of $175,000. Knox has appealed from the jury's verdict and the judge's award of legal fees.

*Facts.* From the evidence, the jury could find the following facts. On January 14, 2001, a contract between FBG and Knox was executed wherein FBG agreed to purchase Knox's pension administration business assets.[4] The sale price was $250,000. FBG paid $140,000 at the closing and signed a promissory note for the $110,000 balance. FBG was to pay the note, plus inter-

---

[2]Prior to June, 2002, FBG had filed a demand for arbitration pursuant to an arbitration agreement in the underlying contract. However, the parties agreed that FBG should withdraw the demand for arbitration and file a complaint in Superior Court.

[3]The jury found for Knox on FBG's breach of good faith claim, and the judge accepted the jury's advisory verdict for Knox on the fraud and G. L. c. 93A claims. The jury found for FBG on Knox's counterclaim for breach of the promissory note. Knox's motion for a judgment notwithstanding the verdict was denied on January 13, 2005.

[4]By the terms of the contract, FBG agreed to buy (a) "[a]ll open customer paper files and all open customer computer files" used by Knox "in the

est, over sixty months and to record a Uniform Commercial Code (UCC) financing statement.[5]

The contract also stated that 228 client files were being sold as part of the transaction and called for Knox to deliver the files to FBG on January 19, 2001, the "main file delivery date." The contract, however, provided that certain files "in progress at the main file delivery date" (work in progress, or WIP) would not be transferred by Knox on January 19.[6] During the negotiations prior to the signing of the contract, FBG repeatedly asked Knox for a list of the WIP files. On one occasion, Knox replied that there were only "a few" WIP files being withheld.

After the main file delivery date, FBG questioned the number of files transferred from Knox. On February 8, 2001, Knox produced a WIP list, which stated that Knox had sold 188 client files to FBG (as contrasted with 228 files as stated in the contract). The list indicated that Knox was withholding sixty-three files as WIP.[7]

---

ordinary course of the business"; (b) "[c]omputer DBASE.dbf database files of all open customers and all open plans, with names, addresses, contacts, . . . as used by [Knox]"; (c) software licenses; (d) telephone numbers; (e) goodwill; (f) covenant not to compete; (g) letter of introduction from Knox; (h) limited use of Knox's name when answering telephone inquiries; (i) transitional assistance; and (j) availability of Knox for ongoing consulting services.

[5]Appended to the contract was a covenant prohibiting Knox from competing with FBG for three years.

[6]The contract defined WIP as "[p]ension administration and discrete consulting projects in progress at the main file delivery date, e.g. audits in progress; determination applications in progress; annual administration of plan year ends ending prior to December 31, 2000; annual administration of plan year ends ending on or after December 31, 2000 if the year end was started prior to the main file delivery date (e.g., new business acquired after December 31, 1999 and before the main file delivery date is likely to have its first year's administration pre-started and partially completed by the main file delivery date as part and parcel of the acquisition, set up, and design of the new business, and some 401(k) plans were started before year end in order to meet customer needs). [Knox] will complete this business (if it should and can reasonably be completed and if the customer co-operates) and will bill and collect for this work and the files will be delivered upon such completion (or upon the realization that it cannot be completed in a reasonable time frame), or sooner if that can be accomplished smoothly. Buyer will not be responsible for taking over this work until such time as the files are delivered. Buyer shall not be obligated to accept any files for completion if the customer is not cooperating. [Knox] shall provide a list of WIP plans."

[7]Knox's brief states that he withheld fifty-eight files as WIP. The record ap-

Apparently as a result of the controversy over the withholding of files, Knox accelerated payment of the note pursuant to the terms of the note. Knox claimed that FBG repudiated the contract by not recording the UCC financing statement and by stating that it would not repay the note until the WIP files were transferred.[8] Knox further stated that the covenant not to compete (see note 5, *supra*) would lapse on July 1, 2001, if the note was not paid in full.[9] Pursuant to the contract, FBG brought the dispute to arbitration, and when the parties agreed to litigate, FBG brought the action in the Superior Court.

At the time of trial, Knox had either retained or re-acquired 105 of the 188 total clients transferred to FBG. FBG serviced thirty-four clients remaining from the files it contracted to purchase from Knox.

The jury found that Knox breached the contract by wrongfully withholding files that did not fall within the definition of WIP as provided in the contract. The jury also determined that Knox had breached the contract by violating the covenant not to compete and awarded FBG $75,000 in damages. On Knox's counterclaim, the jury found that FBG's failure to pay the note was excused because Knox had committed a material breach of his obligations under the contract. In response to an inquiry by the trial judge, the jury clarified that they intended to award damages to FBG in the sum of $75,000 and to cancel the note.

The trial judge denied Knox's motion for a judgment notwithstanding the verdict. The judge ruled the jury reasonably determined that Knox had materially breached the contract by withholding a number of files that were not properly characterized as WIP and by wrongfully competing with FBG. The damages awarded by the jury obliged Knox to return some, but not all, of the purchase price to FBG, a finding supported by the evidence. Finding that Knox had himself materially breached the contract in the first instance, the judge held that the jury

pears to indicate that there were between fifty-eight and sixty-three files withheld.

[8] FBG tendered the first four monthly payments on the note, but Knox rejected all of them because they were subject to restrictions and because the first month's payment did not include interest.

[9] The evidence disclosed that Knox had already performed pension administration work for several "non-WIP" clients prior to July 1, 2001.

reasonably found that FBG was excused from performing further under the note.

On appeal, the first issue raised by Knox concerns the judge's instructions to the jury on damages. Knox also claims that the judge committed error in failing to rule, as matter of law, that all pension administration files retained by Knox were WIP files. Finally, Knox claims that the judge committed error by enforcing an alleged settlement agreement concerning the award of attorney's fees.[10]

*Discussion.* 1. *Judge's instructions.* At the outset of the trial, FBG stated that it waived any claim for damages on a benefit of the bargain theory but rather sought damages in restitution for Knox's breach of the contract. Specifically, FBG requested the return of the $140,000 that it paid to Knox and the voiding of the promissory note delivered to Knox for the balance of the sales price. The judge, however, rejected FBG's request, and instructed the jury using "benefit of the bargain" language.[11]

On appeal, Knox challenges the judge's instructions to the jury with respect to damages. Specifically, Knox asserts that because FBG did not claim benefit of the bargain damages, the judge erred in instructing the jury to determine damages on that basis, and a new trial is required.[12]

The long-settled rule for breach of contract recovery is that a

---

[10]Knox also raises as an issue that FBG failed to exercise due diligence as to the number of WIP files prior to the closing, which should foreclose it from recovery on its contract claim. However, Knox did not argue the issue below, and he only raised the due diligence argument in his motion for a directed verdict on FBG's *fraud* claim. Therefore, the issue is deemed waived. *Carey* v. *New England Organ Bank*, 446 Mass. 270, 285 (2006) (issue not raised or argued below may not be argued for the first time on appeal). In any event, Knox's claim is without merit.

[11]The judge instructed that "[t]he basic principle of contract damages is what we call the benefit of the bargain. That is, the injured party should be put in as good a position as if the other party had fully performed its obligations under the contract. Thus, if you find that Knox breached the contract, you should determine the amount of money that would be necessary to give [FBG] the benefit that he would have received if Knox had fully performed. For example, if you find that Knox retained certain files that he should not have retained under the contract, then you should award [FBG] the amount of money that you find would be necessary to give [FBG] the benefit he would have attained if Knox had turned over those files."

[12]Although not raising it as a separate issue, Knox claims that the jury verdict form was inappropriate because the jury were asked to make only one

wronged party is entitled to receive the benefit of the bargain, that is, "be placed in the same position as if the contract had been fully performed." *Doering Equip. Co.* v. *John Deere Co.*, 61 Mass. App. Ct. 850, 855-856 (2004), quoting from *John Heatherington & Sons, Ltd.* v. *William Firth Co.*, 210 Mass. 8, 21 (1911). As an alterative, however, Massachusetts law permits a party to recover "restitution damages," that is, "an amount corresponding to any benefit conferred by the plaintiff upon the defendant in the performance of the contract disrupted by the defendant's breach." *Sullivan* v. *O'Connor*, 363 Mass. 579, 583 (1973).

"The measure of damages is a question of law reviewed de novo on appeal." *Twin Fires Inv., LLC* v. *Morgan Stanley Dean Witter & Co.*, 445 Mass. 411, 424 (2005). However, "[a]n error in jury instructions is not grounds for setting aside a verdict unless the error was prejudicial — that is, unless the result might have differed absent the error." *Blackstone* v. *Cashman*, 448 Mass. 255, 270 (2007).

Here, there was no legal error in the judge's charge. FBG was consistent in its request for damages. It expressly waived any claim for damages it might have had for future lost profits, instead seeking to have the purchase price returned and the note rescinded. The trial judge was correct in preventing FBG's attempt to recover both out-of-pocket losses ($140,000), and the voiding of the note because the evidence established that FBG had received some benefit from the transaction, namely, receipt of some files from Knox, and therefore, return of the full purchase price and rescission of the note was unwarranted.[13] Ultimately, the judge's instruction was consistent with FBG's basic request for return of money it paid for files that were never received. Although Knox is correct that equitable "restitution" damages were not available in the context of a legal claim for

award for both the contract and fraud claims. Knox argues that the verdict form was "necessarily confusing because it did not recognize any distinction between the measures of damages for breach of contract and fraud." However, because Knox did not object to the verdict form below, his objection on appeal is waived. See *Shafnacker* v. *Raymond James & Assocs.*, 425 Mass. 724, 733 (1997); *Beaupre* v. *Cliff Smith & Assocs.*, 50 Mass. App. Ct. 480, 492-493 (2000); Mass.R.Civ.P. 49(a), 365 Mass. 813 (1974).

[13]Rescission of the contract was not proposed by either party.

breach of contract, see *Salamon* v. *Terra*, 394 Mass. 857, 859 (1985), FBG's claim for damages was clearly based in contract.

Even if the language employed by the judge's charge amounted to an error of law, reversal is not required. Although the law in this area is conflicted, there is support for FBG's contention that "restitution" (or restoration) is available in a legal context for breach of contract. See *Sullivan* v. *O'Connor*, 363 Mass. at 583; *Worcester Heritage Soc., Inc.* v. *Trussell*, 31 Mass. App. Ct. 343, 345 (1991); Alperin, Summary of Basic Law § 5.77, at 786 n.12 (4th ed. 2006). The judge correctly instructed the jury to evaluate what FBG actually received in comparison to what FBG was supposed to receive under the terms of the contract. Employing a legal restitution theory, the jury would have had to compare what benefit FBG had conferred upon Knox against the benefit FBG received. Therefore, given the facts of this case, the end result would have been same as to either theory of recovery.

Knox claims that he was prejudiced by the benefit of the bargain instruction because he did not explore alternative reasons for FBG losing clients other than Knox's competition, and did not question FBG about its general operating costs in order to prove that FBG's reduced revenues or profits were not caused by Knox. However, on the breach of contract claim, the judge correctly instructed the jury to focus on the time frame immediately surrounding the transfer of files.

2. *Interpretation of WIP provision in the contract.* Knox asserts it was error for the trial judge to submit to the jury the issue of the parties' intent with respect to the WIP provision. Knox contends the contract language was unambiguous and should have been decided by the judge utilizing general rules of contract interpretation.

The specific WIP clause at issue that the judge submitted to the jury defined WIP as "annual *administration* of plan year ends ending on or after December 31, 2000 if the year end was *started* prior to the main file delivery date" (emphasis added). Knox contended the language is self-evident and includes clients to whom he sent a standard form letter asking for information. FBG, on the other hand, claimed that the majority of plan administration consists of preparing a tax form for a retirement

plan, work that can not be "started" until the final information is received at year-end. As the trial judge noted, "[t]hese contrary views are both consistent with the plain meaning of the words used, and plausible in the context of the transaction; reasonably intelligent persons could adopt either interpretation." Therefore, the clause was ambiguous and the jury were properly called upon to resolve the intent of the parties. See *Citation Ins. Co.* v. *Gomez,* 426 Mass. 379, 381 (1998); *Kobayashi* v. *Orion Ventures, Inc.,* 42 Mass. App. Ct. 492, 497 (1997) (permitting jury to decide the parties' definition of a "deli" in a noncompetition agreement).

3. *Agreement as to legal fees.* The contract contained an arbitration clause, which provided that the prevailing party would be entitled to an award of reasonable attorney's fees. Knox requested that the parties waive arbitration and proceed with litigation in Superior Court. On May 31, 2002, FBG agreed to waive arbitration if Knox would agree that the attorney's fees provision would still apply.

After the trial, FBG filed a motion for attorney's fees; Knox denied FBG's entitlement to such fees. The trial judge determined there would have to be an evidentiary hearing to resolve whether counsel for the parties had agreed to extend the fee-shifting provision. The judge also determined that if there were a valid agreement between the parties to shift fees, FBG would be entitled to an award of $201,635.96 in attorney's fees. The judge "directed the parties to confer in an effort to resolve the fee issue" and gave them a deadline of June 3, 2005, after which date an evidentiary hearing would be scheduled.

On June 2, 2005, attorneys for the parties exchanged a series of e-mails in an attempt to settle the fee dispute. Based on those e-mails, FBG filed a "motion to enforce settlement agreement." Knox opposed the motion on the basis that the e-mails indicated "that the parties did not intend to be bound until a formal settlement document had been signed by the parties. Since there is no formal settlement document signed by the parties, there is no binding settlement agreement between the parties."

The judge found "that the parties intended to be bound by the terms set forth in the e-mail exchange." Knox appeals from the order allowing the motion to enforce the settlement agreement.

"[W]e examine de novo the determination of the e-mail terms as a sufficiently clear and complete agreement." *Basis Technology Corp.* v. *Amazon.com, Inc.*, 71 Mass. App. Ct. 29, 36 (2008). However, "[t]he factual finding of [Knox's counsel's] contemporaneous intent to be bound by the e-mail terms receives review under the 'clearly erroneous' standard of Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996)." *Ibid.*

Here, the e-mail exchanges between the parties formed a clear and complete agreement. On June 2, 2005, Knox's attorney made a "bottom line" offer to FBG by e-mail, agreeing to (1) payment of $150,000 in legal fees "up to the filing of a notice of appeal . . . (assuming you prevail on appeal)"; (2) payment of $25,000 in legal fees "for the appeal . . . (same assumption)"; (3) "not appeal from the amount of the award"; and (4) "disagree (and resolve the issue in due course after rescript) on the issue of [FBG's] entitlement to fees for any new trial." FBG's attorney responded with a counteroffer,[14] and counsel for Knox replied, unambiguously indicating his agreement on the four contested issues.[15] The material terms were set and agreed upon. "The parties were proceeding to 'memorialize' or record the settlement terms, not to create them." *Id.* at 37. Therefore, as matter of law, the e-mails were sufficiently complete and definite to constitute a binding agreement.

The judge's finding that both parties intended to be bound by the June 2, 2005, e-mails was not clearly erroneous. "A finding is 'clearly erroneous' only when, 'although there is evidence to support it, the reviewing court on the entire evidence is left

[14] "1. We will not accept less than $175K. 2. $25K - agreed. 3. Agreed. 4. If we defer this issue at this time, I will have made financial concessions now to avoid an evidentiary hearing, while leaving the prospect of a possible evidentiary hearing in the future. Quite frankly, I did not think this would be a hotly contested issue. If you are willing to acknowledge [FBG's] entitlement to legal fees under the current scenario, what is the problem with also stipulating that to be a continuing right of [FBG] (assuming he is ultimately the prevailing party), subject to Court approval of the amount of fees?"

[15] "1. Since Knox is confident about his success on appeal, at this point we will agree to the $175K. 4. On the same theory, we will agree to the entitlement to a reasonable fee if your client is prevailing party on any retrial. We need to reduce this to a writing. Given the hour and our unavailability tomorrow, I am content to wait until Monday. I would report to [the judge] that we have agreed on terms subject only to a formal document next week."

with the definite and firm conviction that a mistake has been committed.' " *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 509 (1997), quoting from *Building Inspector of Lancaster* v. *Sanderson*, 372 Mass. 157, 160 (1977). The judge, finding that the e-mail exchange included all material terms, a deadline for acceptance, and acceptance without equivocation, concluded that the parties intended to be bound by them. *McCarthy* v. *Tobin*, 429 Mass. 84, 87 (1999) (parties' intent to be bound is the "controlling fact" in determining whether the agreement is enforceable). The judge further relied on her "familiarity with the relationship and the history of dealings between the parties" to conclude that the subsequent language regarding reducing the agreement to a writing was a mere formality, designed to prevent any subsequent disputes. See *Rosenfield* v. *United States Trust Co.*, 290 Mass. 210, 216-217 (1935) (subsequent document is not conclusive of lack of intent). Based on the e-mail exchange, we can not say that the judge's finding of the parties' intent to be bound was clearly erroneous. Therefore, the judge properly determined that the June 2, 2005, e-mails constituted an agreement by which the parties intended to be bound.[16] *McCarthy* v. *Tobin*, 429 Mass. at 87.

Based on the foregoing reasons, we affirm the judgment in favor of FBG, the award of damages, and the enforcement of the parties' settlement agreement relating to attorney's fees.

*So ordered.*

---

[16]It follows that FBG is entitled to appellate attorney's fees in the amount of $25,000 in accordance with the agreement.