NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-961

GIUSEPPE CRACCHIOLO & another[1]

vs.

BRADLEY K. BASS & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Bradley Bass appeals from a judgment entered after the judge assigned to these matters allowed the plaintiffs' motion to enforce a settlement agreement. The crux of Bass's argument on appeal is that the judge's finding that Bass had intended to be bound by the terms of an unsigned settlement agreement is clearly erroneous. In addition, among other things,[3] Bass argues that, in light of his pro se status, he should have been given

_____

[1] Maria Cracchiolo.

[2] Jean E. Bass and Catherine A. Barry, as personal representatives of the estate of Cindy L. Bass; neither is a party to this appeal. Bradley Bass is sued in his individual capacity and as personal representative of the estate of Cindy L. Bass.

[3] To the extent Bass is attempting to raise additional arguments, they are difficult to discern from his brief and, in any event, do not rise to the level of appellate argument.

more time to prepare an opposition to the motion to enforce the settlement, that the judge timed the entry of judgment to thwart him from taking an interlocutory appeal, and that the judge made misleading statements during the June 6, 2022 pretrial conference that induced him to enter into the settlement. Bass also argues that the judge erred in not deciding his motion for judgment on the pleadings before entering judgment. We affirm.

Bass's late mother, who died intestate, owned a property on Harriet Road in Gloucester. After Bass and his two siblings (Bass siblings) became personal representatives of their mother's estate, they entered into a purchase and sale agreement (P&S) with the plaintiffs to sell them the property. The sale never took place. The plaintiffs brought the underlying actions[4] seeking, among other things, to compel specific performance of the P&S. Subsequently, the Bass siblings sought leave to bring a third-party complaint against attorney Sean Z. Keough, who had represented them in the probate proceedings. On May 2, 2022, the Bass siblings sought to bring a third-party complaint against the Massachusetts Housing Finance Agency (MassHousing) after MassHousing gave notice of foreclosure of its mortgage on

_____

[4] The plaintiffs filed suit in both the Superior Court and the Land Court. The Land Court judge was interdepartmentally assigned as a justice of the Superior Court to handle the Superior Court claims in addition to those asserted in the Land Court complaint.

2

the property; they also sought an injunction against the foreclosure.  At a hearing on May 9, 2022, MassHousing agreed to postpone the foreclosure until July 1, 2022.  The cases were in this posture when the following actions, hearings, discussions, communications, and statements concerning settlement took place.

On May 19, Bass sent an e-mail message to plaintiffs' counsel referring to settlement discussions and setting out a demand that the plaintiffs "come to $460K to get this done."  On May 20, 2022, Bass sent another e-mail message to counsel for the plaintiffs, stating:

> "Here is the deal.
>
> "I will sell your clients the house for $450K.  We want an additional $10K to release all claims.  I need a yes or no in the next hour."

Not long thereafter, Bass sent a follow-up e-mail message saying, "Write it up for $445 and $5K."  A few hours later, after plaintiffs' counsel noted that Bass would need to close the probate to deliver clear title, Bass sent another e-mail message to plaintiffs' counsel stating:

> "We agreed to $445K and $5K in principle.  You agreed, we agreed."

On May 22, 2022, Bass sent an e-mail message to plaintiffs' counsel to "clarify our terms" and stating, among other things, that "[w]e sell your clients the house for $450K as part of a global settlement with Sean Keough."

3

At a status conference held on May 23, 2022, the parties reported that they were having ongoing settlement discussions.

The following day, Bass sent an e-mail message to plaintiffs' counsel with the subject matter "One remaining condition."  He stated:  "We are settling this case based on the belief that your clients will be buying the house to live in it."

On May 28, 2022, Bass told counsel for attorney Keough to draft up the settlement based on Keough paying $72,000 and the plaintiffs paying $450,000 for the property.

At a status conference on May 31, 2022, the parties reported that they were close to a settlement agreement. Despite that progress, the judge set the cases down for trial on June 7 - 10, 2022, with a pretrial conference set for June 6, 2022.  Later that day, counsel for attorney Keough circulated a draft settlement agreement to plaintiffs' counsel for review. The draft reflected the terms set out in the May 28 e-mail message.

On June 2, after a neighboring property went on the market for $1.5 million, Bass wrote to all counsel that "it has been over a week since we agreed to a settlement in principle, but we have not seen [a draft settlement] agreement yet, I think we are best off going to trial."  Counsel responded that a draft would be circulated in two hours, which in fact it was.  That draft

4

agreement again reflected that attorney Keough would pay $72,000, and that the plaintiffs would buy the property for $450,000. Also on June 2, 2022, Bass wrote that "[w]e agreed in our hearing with Judge Foster to closing on June 30th and during our post hearing zoom -- it was agreed upon. We need to stick to the agreed upon terms."

On June 5, 2022, counsel for attorney Keough wrote that he and Bass had connected and cleared up a few points and had "very few remaining actions open."

At 8:36 A.M. on June 6, 2022 -- the date of the scheduled pretrial conference -- counsel for the plaintiffs sent through an e-mail message a revised settlement agreement showing changes from the previous draft. Again, the essential terms remained that attorney Keough would pay $72,000 and that the plaintiffs would pay $450,000 for the property. There were only two changes to the agreement: one eliminated the requirement that Bass use the Keough payment to satisfy the MassHousing mortgage; the other merely called for the purchase price to be paid in one lump sum of $450,000, rather than in a preliminary $5,000 payment with $445,000 to follow.

The docket reflects that, at the pretrial conference on June 6, 2022, the parties reported the case settled. The transcript of the hearing shows that the following exchange took place after the Basses were sworn:

5

THE COURT:  ". . . Where do we stand here?"

PLAINTIFFS' COUNSEL:  "Your honor, I think we're in good shape.  It's been a bit of a bumpy road the last week or so.  Yesterday, [Bass] and I had a good conference call, and I believe we have this settled in principle.  Jen got up early this morning and has worked on the settlement agreement, which in all fairness to the Basses, they probably saw it around 8 a.m. so they may not have had time to review it all.

   "But I would like to report to the Court that we have it settled subject to completion of that settlement agreement, with a closing on June 30th.  So I think the goal today would be to stay this action until we can actually -- we're going to be able to dismiss it if the settlement comes through, because the settlement contemplates our turning the property back over to the Basses if we don't close on June 30th."

THE COURT:  "Mr. Bass?"

MR. BASS:  "I agree with him."

THE COURT:  "OK.  Ms. Bass, you agree?"

MS. BASS:  "Yes, I do."

THE COURT:  "Ms. Barry?"

MS. BARRY:  "I do."

Based on these representations, the trial was removed from the court's docket.

In an undated letter, the Bass siblings wrote to counsel for attorney Keough and counsel for the plaintiffs in which they acknowledged that although a "verbal settlement agreement [had been] agreed to on Sunday, June 5, 2022," they were nonetheless withdrawing from it based on their concerns about differing

6

dates of signatures on a document called "Rider I."[5]

Nonetheless, the Bass siblings stated that, if their concerns over the signature dates were satisfied, they were still willing to complete the settlement that had been agreed to.

On June 10, 2022, the Bass siblings filed a motion for judgment, indicating that they no longer agreed to the settlement, and on June 14, 2022, they filed a statement withdrawing from the settlement agreement. At the same time, their motion for judgment sought specific performance of the purchase of the property by the plaintiffs. However, Bass wanted adjustments made to the purchase price based on the passage of time and the increase in real estate values.

On June 15, 2022, the parties appeared for a status conference during which Bass represented that the defendants were withdrawing from the settlement agreement on the ground that the plaintiffs had acted in bad faith. When asked why the Bass siblings were withdrawing from the settlement, Bass acknowledged that he had agreed to the settlement and that he had represented to the court on June 6 that the case had been settled. He stated that the issue surrounding Rider I and the date on which it was signed was what caused him to withdraw from

_____

[5] It is not clear from the appellate record what Rider I was. But no one challenges the judge's description of it as an extension of the P&S.

7

the settlement.  In brief, the electronically signed version of Rider I had a different date of execution than the version that was signed in handwriting.  Bass's view was that the date of execution on one of the versions of Rider I was either false or forged and that his contention in this regard justified stepping away from the settlement.  In the end, Bass stated to the judge the Bass siblings needed to sell the property, wanted to sell it to the plaintiffs, were able to complete the settlement, but that he did not want to release the plaintiffs from any claims so that he could pursue them further for the "windfall" of getting the property.  Counsel for the plaintiffs countered that they intended to file a motion to enforce the settlement.  The judge ordered that any such motion be filed by the end of the day, including the terms of the agreement, and that any opposition be filed within two days thereafter.

As anticipated, the plaintiffs filed a motion to enforce settlement.  Bass's opposition to the motion stated, among other things,

> "The house next to ours did sell for over a million dollars -- it totally influenced us, though, that is why it went under contract on Saturday, June 4th and we went to Court on Monday, June 6th and told the court we agreed to a settlement [emphasis added]."

On June 21, 2022, the judge held a hearing on the motion to enforce settlement, at which the Bass siblings chose not to appear.  The judge then allowed the motion in a detailed and

8

thoughtful memorandum explaining his analysis and reasoning. The Bass siblings subsequently moved for reconsideration, which was also denied and judgment thereafter entered. This appeal followed.

Discussion. Bass's primary argument on appeal is that the judge erred in finding that the parties had reached a settlement as of June 6, 2022, when they appeared for the pretrial conference. We review the judge's factual determination for clear error. See Basis Tech. Corp. v. Amazon.com, Inc., 71 Mass. App. Ct. 29, 36 (2008). "A finding is 'clearly erroneous' only when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Fecteau Benefits Group, Inc. v. Knox, 72 Mass. App. Ct. 204, 212-213 (2008), quoting Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 509 (1997).

Bass has failed to show clear error here. The record easily permitted the judge to find that when the Bass siblings stated that they agreed with plaintiffs' counsel's report that a settlement had been reached, the parties had in fact reached agreement on all material terms of the agreement. Indeed, Bass himself did not dispute that, on June 6, he informed the judge that a settlement had been reached. Nor does he identify any material term of the settlement that had not been reached by

9

that date.  See Situation Mgt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000) (to create enforceable contract, there must be agreement on all material terms).  Nor could he credibly do so.  The record before the judge showed that the parties had been in agreement on the material terms of a settlement over several versions of the draft written contract:  attorney Keough would pay $72,000 to the Bass siblings, and the plaintiffs would pay $450,000 for the property with a closing on June 30, 2022.

Instead, Bass argues that his post-agreement discovery that there were two different versions of Rider I signed on different days justified "withdrawing" from the settlement agreement.  A material breach of a contract may, in appropriate circumstances, justify the other party from walking away from a contract and no longer being bound by it.  See G4S Tech. LLC v. Massachusetts Tech. Park Corp., 479 Mass. 721, 734 (2018).  "[A] material breach of a contract occurs when the breach concerns an essential and inducing feature of the contract [quotation omitted]."  Id. at 733-734  The judge did not err in concluding that the signature date of Rider I was not a material term of the settlement.  Indeed, the only references to Rider I were in two whereas clauses in an exhibit to the draft settlement document, and those references merely recited extension dates contained in Rider I.  The agreement imposed no obligation on

10

the plaintiffs with respect to Rider I, let alone one that they could be said to have breached.

In light of our conclusion that the judge did not err in finding that the parties had reached agreement on all material terms of a settlement by June 6, when they all reported the case settled, we need say little about Bass's remaining arguments. We are unpersuaded by Bass's contention that the judge conducted the June 6 pretrial conference in a manner that induced him to report the case settled. The transcript shows that the parties reported the case settled at the outset of the conference; at that point the judge had done nothing more than inquire as to the status of things. We also discern no abuse of discretion in the judge's schedule for briefing the motion to enforce settlement, nor did Bass object below to the timetable. Although the judge imposed tight deadlines for the submissions, he did so with an equal hand on both sides. Bass was not entitled to special treatment as a self-represented litigant. See Briscoe v. LSREF3/AH Chicago Tenant, LLC, 481 Mass. 1026, 1027 (2019), quoting International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 847 (1983) ("A pro se litigant is bound by the same rules of procedure as litigants with counsel"). We also see no support in the record for Bass's contention that judgment entered prematurely for the purpose of depriving him of an interlocutory appeal. In any event, Bass has failed to explain

11

how an interlocutory appeal would have provided something that this full appeal does not. Finally, having allowed the motion to enforce settlement, the judge was not required to act on any pending unresolved motions, including Bass's motion for judgment on the pleadings.[6]

Judgment affirmed.

By the Court (Wolohojian,
Shin & Ditkoff, JJ.[7]),

Joseph F. Stanton

Clerk

Entered: October 18, 2023.

---

[6] We allow the appellees' request for an award of attorney's fees and costs on appeal against Bass. In accordance with the procedure specified in Fabre v. Walton, 441 Mass. 9, 10-11 (2004), the appellees may, within fourteen days of issuance of the rescript, submit an application for appellate attorney's fees and costs with the appropriate supporting materials. Bass shall have fourteen days thereafter to respond.

[7] The panelists are listed in order of seniority.