NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-951

RCS LEARNING CENTER, INC., & another[1]

vs.

ANN B. PRATT, trustee,[2] & others.[3]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This case arises out of a failed real estate transaction between the plaintiffs, RCS Learning Center, Inc. and RCS, Behavioral & Educational Consulting LLC (collectively "RCS"), and the defendants, Ann B. Pratt, trustee of the Nobscot Realty Trust ("the trust"), Northside LLC ("Northside"), Robert E. Foley ("Foley"), and Foley's son, Luke R. Foley ("Luke"). In May 2015, the plaintiffs entered into a purchase and sale agreement ("the agreement") whereby RCS agreed to purchase two contiguous parcels of real estate located in Framingham, one owned by the trust and the other owned by Northside. When, after extensive unsuccessful negotiations, RCS failed to acquire

---

[1] RCS, Behavioral & Educational Consulting LLC.
[2] Of the Nobscot Realty Trust.
[3] Northside LLC, Robert E. Foley, and Luke R. Foley.

the property, it commenced this action in the Land Court seeking specific performance or, in the alternative, damages and restitution of all payments it had made toward the purchase price. The amended verified complaint alleges breach of contract (count one), breach of the covenant of good faith and fair dealing (count two), detrimental reliance (count three), and unjust enrichment (count four) against the trust and Northside. Count five of the complaint was directed solely to defendants Foley and Luke and sought recovery of approximately $138,000 in loans ("money had and received").[4]

On the eve of trial, RCS waived its claim for specific performance and proceeded to trial on its alternative claims. The Land Court judge, who was appointed to sit as a judge of the Superior Court, concluded that neither party had breached their agreement, and that instead the parties had "abandoned" it. The judge then determined that RCS was entitled to the return of the money it had paid to the trust, Northside, and Foley, and entered judgment against the trust and Northside on count four and against Foley on count five in the total amount of $763,000. All remaining claims were dismissed with prejudice. The judge

---

[4] The plaintiffs also sought recovery of money they spent toward improving the property. The judge concluded that the plaintiffs were not entitled to be reimbursed for these expenditures and the plaintiffs do not contest this aspect of the judgment on appeal.

further concluded that RCS was not entitled to prejudgment interest or costs.

RCS appeals on one issue:  it claims that the judge erred by not awarding prejudgment interest.  The defendants cross-appeal on three issues:  first, they claim that the judge erred by finding that RCS did not breach the agreement.  Second, they argue that due to the alleged breach they are entitled to retain the money they received from RCS as liquidated damages.  Third, Foley argues that because he was the "acting agent" for the trust and Northside at all times, he cannot be held personally liable under a theory of money had and received.

Background.  We briefly summarize the relevant facts from the judge's detailed findings.  RCS wished to purchase land to build a facility from which it could operate its day care program and provide services for children and young adults diagnosed with autism spectrum disorder.  With the assistance of Foley, RCS located two parcels of land owned by the trust and Northside and agreed to purchase the property for approximately $2.5 million.  The agreement was signed on May 6, 2015, and required a $25,000 deposit.  Among other terms, the agreement provided that if RCS defaulted, the defendants were to retain "all deposits" as liquidated damages.  A few weeks later, on May 22, 2015, the parties amended the agreement to effect a change

3

of the escrow agent but otherwise ratified and confirmed the original agreement.

Thereafter, over the course of approximately two years, the parties discussed and drafted numerous amendments to the agreement.  The question whether some or all of these proposed modifications were binding was hotly disputed at trial.  There was no dispute, however, that while the parties were negotiating modifications to the agreement, RCS made significant payments to the trust, Northside, Foley, and Luke.  By September 2016, RCS had paid the defendants a total of $763,000.  Some of those payments were characterized as loans and were used by the trust and Northside to meet their mortgage and real estate tax obligations.  Other payments were made directly to Foley, and RCS also loaned money to Luke for personal business purposes.  The judge found that the loans to Foley and Luke were "not tied to the acquisition of the property."  Although Luke repaid the loan to Foley, RCS was not repaid.[5]  According to RCS, Foley agreed that all the money he had received would be put toward the deposit on the property.[6]

---

[5] Foley testified at trial that Luke repaid all the money borrowed from RCS to him and that he did not return the funds to RCS.

[6] It does not appear from the record that Foley argues to the contrary.

4

Ultimately, notwithstanding how the monies paid to the defendants were described or used, the judge found that RCS intended all of the payments to be credited towards the purchase of the property. Moreover, as the judge explained, the extent to which the agreement was modified and the question whether one party or the other breached the agreement as modified was inconsequential because, in the final analysis, "neither party tendered performance under the agreement as modified so as to put the other in breach and that, instead, the parties abandoned their agreement." As previously noted, the judge then concluded that RCS was entitled to restitution of the $763,000 it paid to the defendants under the theories of unjust enrichment (count four) and money had and received (count five). The judge further concluded that RCS was not entitled to prejudgment interest because it initially sought specific performance and the return of the monies paid by them to the defendants was not an award of damages that would trigger the prejudgment interest statute.

Discussion. 1. RCS's appeal. RCS contends that it is entitled to prejudgment interest under G. L. c. 231, § 6C or § 6H.[7] We disagree. As we discuss below, there can be no

---

[7] RCS has not pursued its claim for costs.

5

assessment of interest under either section because there was no award of damages.

In pertinent part, G. L. c. 231, § 6C provides:

"In all actions based on contractual obligations, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages at the contract rate, if established, or at the rate of twelve per cent per annum from the date of the breach or demand."

In Henry v. Morris, 62 Mass. App. Ct. 714 (2004),[8] on which the judge properly relied, we observed that "[F]or a claim to come within the compass of [§ 6C], a breach of a contractual obligation must occur, and that breach ultimately must ripen into a judgment for pecuniary damages." Id. at 717, quoting Protective Life Ins. Co. v. Dignity Viatical Settlement Partners, L.P., 171 F.3d 52, 54 (1st Cir. 1999). Here, the

---

[8] We agree with the judge that Henry, 62 Mass. App. Ct. at 715-718, is dispositive. In that case the buyers brought an action for specific performance of a purchase and sale agreement. Id. at 715. The trial judge found that neither party had breached the agreement and ordered the return of the deposit to the buyers and awarded prejudgment interest and costs. Id. at 716. We reversed the award of interest and costs because the return of the buyers' deposit was not an award of damages and because the buyers were seeking specific performance and the trial judge made no finding that the deposit was wrongfully withheld. See id. at 717-718. RCS's attempt to distinguish the present case from Henry is unavailing. It matters not, as RCS claims, that RCS ultimately waived its claim for specific performance. Nor is it significant that the payments at issue were not held in escrow as the deposit was in Henry. Lastly, contrary to RCS's assertion, the buyers in Henry, like here, sought specific performance and, in addition, "costs, damages, interest, attorney's fees, and other further relief." Id. at 715.

judge specifically found there was no breach of the agreement. "Therefore, the judge's decision to return the deposit [payments] to the buyers was not an award of damages that would trigger the statute." Henry, supra at 717.

In addition, as we further observed in Henry, "the policy underlying G. L. c. 231, § 6C, is that '[p]rejudgment interest serves to compensate [a party] for the loss of use of money wrongfully withheld.'" Id. at 717-718, quoting Cambridge Trust Co. v. Commercial Union Ins. Co., 32 Mass. App. Ct. 561, 568 (1992). Here, RCS did not demand that the defendants return the payments it made toward the purchase price. Instead, it pursued a claim of specific performance until the first day of trial. Up to that point, had RCS prevailed and specific performance been granted, the defendants would have retained the payments. That RCS ultimately did not pursue its claim for specific performance is of no moment where, as here, the judge made no finding that the payments were wrongfully withheld by the defendants. Compare National Starch & Chem. Co. v. Greenberg, 61 Mass. App. Ct. 906, 908 (2004) (ordering award of prejudgment interest on deposit wrongfully retained where buyer demanded return of deposit and seller's refusal to release it "deprive[d] the buyer of funds to which she was then rightfully entitled"). Accordingly, as the judge concluded, G. L. c. 231, § 6C is not applicable.

7

RCS's argument that it is entitled to prejudgment interest under G. L. c. 231, § 6H, the so-called "catch-all" provision of the statute, fares no better. See Herrick v. Essex Regional Retirement Bd., 465 Mass. 801, 807 (2013), quoting G. L. c. 231, § 6H ("Section 6H is a catch-all interest provision that applies to 'any action in which damages are awarded, but in which interest on said damages is not otherwise provided by law'").

Section 6H provides in pertinent part:

> "In any action in which damages are awarded, but in which interest on said damages is not otherwise provided by law, there shall be added by the clerk of court to the amount of damages interest thereon at the rate provided by section six B to be determined from the date of commencement of the action even though such interest brings the amount of the verdict or finding beyond the maximum liability imposed by law."

This provision "reflects the Legislature's intent that prejudgment interest always be added to an award of compensatory damages." George v. National Water Main Cleaning Co., 477 Mass. 371, 378 (2017). However, "[n]ot all forms of monetary relief are compensatory and, accordingly, not all monetary awards are considered damages." Brennan v. Ferreira, 102 Mass. App. Ct. 315, 317 (2023). "In assessing whether G. L. c. 231, § 6H, requires the assessment of prejudgment interest . . . we are guided by the difference between compensatory damages, on the one hand, and restitutionary remedies, on the other." Governo Law Firm LLC v. Bergeron, 487 Mass. 188, 199 (2021). A

8

restitutionary remedy does not require an assessment of prejudgment interest. See id. In this case, the judge's decision to order the return of money RCS paid to acquire the property was not an award of damages that requires the assessment of prejudgment interest because the recovery was "restitutionary." Thus, the award of $763,000 does not constitute damages within the meaning of G. L. c. 231, § 6H and an assessment of prejudgment interest was not warranted.

2. Defendants' appeal. The defendants assert that they are entitled to retain the payments made by RCS as liquidated damages. This claim is based on the unfounded premise that the judge erroneously determined that the parties abandoned the agreement. "A finding is 'clearly erroneous' only when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Fecteau Benefits Group, Inc. v. Knox, 72 Mass. App. Ct. 204, 212-213 (2008), quoting Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 509 (1997). There was no mistake here.

The judge made extensive and detailed findings based in large part upon her assessment of the credibility of the witnesses. She specifically found that the parties were not working toward the consummation of the agreement and that neither party had tendered performance within a reasonable

9

period of time after the closing should have occurred. The judge also found that although by May 2017, RCS did not appear ready, willing, and able to close due to a lack of financing, by that time the defendants' position was that the agreement had "expired and was unenforceable" and not that RCS was in breach. In sum, because the judge's finding that neither party was in breach of the agreement and that instead the agreement had been abandoned was not clearly erroneous, the liquidated damages clause was not triggered, and the defendants were not entitled to retain the deposits.

The defendants' final claim that the judge erred in holding Foley individually liable was never raised before or during trial. "Objections, issues, or claims -- however meritorious -- that have not been raised at the trial level are deemed generally to have been waived on appeal." Palmer v. Murphy, 42 Mass. App. Ct. 334, 338 (1997). Because this claim "fits none of the usual exceptions to the general rule that claims not raised below are waived," we need not address it. Id. at 338-339. In any event, even if the claim were preserved, we discern no error. "An action for money had and received lies to recover money which should not in justice be retained by the defendant, and which in equity and good conscience should be paid to the plaintiff." Cannon v. Cannon, 69 Mass. App. Ct. 414, 423 (2007). It is undisputed that RCS made numerous payments to

10

Foley both personally and on behalf of the defendants that were to be credited against the purchase price. RCS did not acquire the property. Thus, the evidence fully supported the judge's decision that it would be against equity and good conscience to permit Foley to retain the payments.[9]

Judgment affirmed.

By the Court (Vuono, Meade & Walsh, JJ.[10]),

Assistant Clerk

Entered: January 12, 2024.

---

[9] The defendants' request for costs and fees is denied.
[10] The panelists are listed in order of seniority.